LITTLE ROCK RAILWAY & ELECTRIC COMPANY *v.* DOBBINS.

Opinion delivered April 30, 1906.

1. CORPORATION—LIABILITY FOR MALICIOUS ACTS OF AGENT.—A corporation, as distinguished from an individual, is liable in punitive damages for the malicious acts of its agents, done within the scope of their employment, although such acts were not ratified by it. (Page 560.)

2.  STREET-RAILWAY COMPANY—EJECTION OF PASSENGER—DAMAGES.—Evidence that a street-car conductor maliciously and without provocation subjected one of its passengers to humiliating insults, and wrongfully caused him to be arrested and removed from the car in which he was riding, is sufficient to sustain a verdict for compensatory damages in the sum of $500 and for punitive damages in the sum of $250. (Page 562.)

3.  SAME—SCOPE OF AUTHORITY OF CONDUCTOR.—A street-railway company is liable for the wrongful acts of its conductor in ordering a policeman to arrest one of its passengers and remove him from the car in which he was riding; but not for such conductor's subsequent acts in prosecuting the passenger for a breach of the peace, such prosecution not being within the scope of the conductor's authority. (Page 562.)

4.  APPEAL—ERROR NOT COMPLAINED OF.—Where a complaint against a street-railway company, among other counts, contained one for false imprisonment, and a demurrer to this count was taken under advisement, and was sustained after evidence in support of it had been introduced by the plaintiff, the defendant on appeal can not complain that, in sustaining the demurrer, the court failed to instruct the jury not to consider the evidence so introduced, if he failed to ask that the evidence should be excluded. (Page 564.)

5.  TRIAL—INSTRUCTION.—A prayer for instruction was properly refused where it submitted to the jury questions that were not in dispute or that were irrelevant to the issue. (Page 565.)

Appeal from Pulaski Circuit Court; *Edward W. Winfield,* Judge; affirmed.

STATEMENT BY THE COURT.

The complaint was in four paragraphs. In the first, appellee alleged that he entered appellant's car at the Choctaw Depot to become a passenger, and that appellant's conductor, one Barger, "wrongfully and without cause assailed him with offensive and insulting language, and expelled him from the car, and refused to permit him to re-enter it and resume his rights as a passenger thereon, by reason of which he was insulted and humiliated, to his damages in the sum of $1,500.

In the second paragraph, he alleged that he entered one of appellant's cars at or near the corner of Main and Markham streets, for the purpose of becoming a passenger and obtaining proper transfers for himself and family, then on said car, and upon request of the conductor paid the fare. That he asked the conductor for transfers, and that said conductor in an insulting and offensive manner said to him, "I

will give you a transfer," and at once called a policeman from the sidewalk, who arrested him and took him from said car, saying, "We will furnish the evidence," and that said conductor wrongfully and maliciously did assault and lay hand upon him, and forcibly ejected him from the car without his consent, by reason of which he was separated from his family and friends, insulted, humiliated and inconvenienced to his damage in the sum of $2,000.

The third paragraph is a repetition of the second, and in addition sets up that the conductor unlawfully, maliciously, etc., did cause him to be arrested illegally and without warrant and taken into custody and through the principal streets of the city to the police station, and to be forcibly and unlawfully deprived of his liberty and falsely imprisoned, to his damage in the sum of $2,500.

The fourth, in addition to the matters already set forth, charged that appellant did wilfully, maliciously and without reasonable or probable cause, falsely charge plaintiff with disturbing the peace, and caused him to be arrested and taken from the car into custody through the principal streets of the city to the police station and there charged with disturbing the peace, and caused said charge to be entered upon the docket of the police court, so that plaintiff was compelled to answer said charge; that on the next day the defendant, through its said conductor, Barger, and through servants and agents, prosecuted the said charge wrongfully and maliciously and without reasonable or probable cause; that plaintiff was tried and acquitted, and said prosecution then wholly ended and terminated. That said prosecution became widely known, and greatly distressed and humiliated plaintiff, etc., to his damage in the sum of $2,500.

The defendant answered. Thereupon the cause came on for trial before a jury, and, after the plaintiff's opening statement of the case, the defendant, by leave of the court, entered its demurrer in short on the record to the third and fourth counts in plaintiff's complaint, and the court sustained the demurrer to the fourth count, and gave judgment in favor of the defendant, and took under consideration the demurrer to the third paragraph. Thereupon the trial proceeded, and, after hearing all the evidence adduced and the hour of adjournment having arrived, the cause

was continued until the next day. The next day the court, having heard all the evidence and being sufficiently advised as to its ruling upon the demurrer to the third count, sustained the same, and gave judgment thereon in favor of the defendant. And thereupon, after hearing the argument of counsel and the instruction of the court, the jury retired to consider their verdict, and after due deliberation returned to the court the following verdict:

"We, the jury in the case of Dobbins *v.* Little Rock Railway & Electric Company, find as follows: On count one, for the defendant; on count two, compensatory damages, $500; exemplary damages, $250. T. P. Murrey, foreman."

Judgment was entered accordingly against appellant, and it prosecutes this appeal.

The facts as stated by appellee are substantially as follows:

On the 19th of June, 1903, D. F. Dobbins, who was acting as chairman of the committee of arrangements for a picnic excursion given by the Immanuel Baptist Church, was returning with the picknickers, among whom were the members of his family, from an excursion over ·C., O. &. G. Ry. to Benton, Arkansas. They arrived at the Choctaw depot between five and six o'clock in the ·afternoon. Four or five street cars were there awaiting the picnic party. They boarded these cars. They were summer cars with seats facing the front platform. Appellee got up and gave his seat to another, and, according to his statement, turned his back toward the front end of the car, and "leaned back on the front 'dash board,'" facing the passengers in the car. The car was crowded, and there were no other seats. He was talking to another passenger, and had not noticed that there· was any crank on the car, or that the conductor and motorman were not on the car. He accidentally moved his right arm and touched the controller of the car, and the car moved forward slightly. He saw that he had turned on the power, and immediately jerked the controller back to its place. The car moved some ten or twelve inches. The motorman .at that moment came from the sidewalk, and took off his controller, and the conductor stepped up on the car, and ordered him off in a very abrupt and insulting manner.

The witness (appellee) then continued his account of the occurrence as follows:

"He ordered me off, and said that I should know that he was running the car. He said, 'I am running the car, and you will have to get off.' I stepped down, and he stepped down beside me, and I told him I felt very badly about the affair. I said, 'My friends and family are on the car, and I do not want to have any trouble.' I thought I could argue the matter with him, and get on the car, and it would be all settled, but he said in an abrupt way, and using an oath, 'You and your family is nothing to me. You can't ride on this car.' He said, 'You and your family ain't a damn to me' or something of the kind. He spoke in a rough and abusive way, and I felt greatly humiliated. I had entered the car for the purpose of becoming a passenger thereon, and it was an accident that I moved my arm and touched the controller. I explained that to the conductor. I then boarded the first car in front. I live at Eleventh and Ringo, and wanted to go to the western part of the city. I rode on the front car from the Choctaw depot to Main and Markham, where I understood that the car I was on was not the right car for me to go home, and, observing that the car behind me, the one I had got off of, was a West Fifteenth street car, and would pass Ninth and Main, which was my place of transfer, and, my children being on that car, I stepped back on it, for the purpose of going home with them. When I got back on it, the conductor, Barger, immediately came to me and said, 'Do you want to see me?' I replied 'No,' and he said 'Pay your fare,' and I paid him. The car was moving around the Main Street curve, and there was a notice on the car that passengers should ask for transfers at the time of paying their fare. I said to the conductor. 'I would like to have a transfer for myself and children to West Ninth Street line,' and he replied, 'I will give you a transfer; I will transfer you from this car.' The car moved around the curve, and he called for a policeman and said, 'Take this man off the car.' The policeman, accompanied by a man dressed in street car uniform, immediately came from the sidewalk, and got on the car, and the policeman took hold of me by the arm, saying, 'Come with me.' The other man, dressed in street car uniform, accompanied the policeman off the car. The conductor said to the policeman, 'Take this man off the car. We will furnish the evidence.' The policeman was the man who

took hold of me. I never knew the name of the other street car man. He was one of the men who appeared as a sort of a witness in the police court. He did not come to the police headquarters with the officer and me.

"Q. Where did the officer take you?

"A. He took me to the police station."

· Counsel for appellant objected to the above question and answer on the ground that it was incompetent, irrelevant, and immaterial, which objection the court overruled, and appellant saved its exception. The testimony for appellant was in direct conflict with the above on material points.

. *Rose, Hemingway, Cantrell & Loughborough,* for appellant.

1. The verdict was excessive, there being no ground for punitive damages. When an agent of a principal acts maliciously, he is presumed to act without authority; and while the agent is liable for punitive damages, the principal is not, unless it appear that he aided, adopted or ratified the malicious act of the agent with a full knowledge of the facts. 63 Ark. 387; 147 U. S. 104; 85 N. Y. Supp. 363.

2. It was error to admit testimony of witnesses in relation to the arrest and prosecution of plaintiff. 65 Ark. 149.

3. The court erred in modifying the tenth instruction asked by defendant and giving it as modified. Appellant had not become a *bona fide* passenger. If he entered the car with improper motives and not in good faith to become a passenger thereon, the relation of carrier and passenger did not exist. This was a question for the jury. 35 Am. Rep. 450; Shear. & Red. Neg. 305, § 262. For definition of "passenger," see 3 Thompson on Neg. 96. § 2634. A passenger rightfully ejected from a car who immediately gets on the car again is a trespasser. 5 Am. & Eng. Enc. Law, 500; 42 Fed. 787. One who boards a car to commit a breach of the peace with the conductor is not a *bona fide* passenger. 8 S. E. 70.

*W. L. Terry,* for appellant; *Walter J. Terry,* of counsel.

1. Since the court sustained the demurrer to the fourth count of the complaint, and instructed the jury that plaintiff was not entitled to recover damages for his arrest and subsequent prosecution by the conductor as charged in the third and fourth

counts of the complaint, appellant was not prejudiced by admission of evidence in relation to the arrest and prosecution.

2. Appellant's tenth instruction should not have been given as asked, because there was no issue in the pleadings and evidence on which it could be based. 63 Ark. 568. And because it submitted to the jury matters not in dispute, and which, if in dispute, could not affect the conclusion sought to be arrived at. 67 Ark. 147; 69 Ark. 497. See also 70 Ark. 443; *Ib.* 103. It was plaintiff's privilege to obtain a transfer ticket, and it was improper to assume that it was his duty to do so at any time or place. 72 Ark. 295. But, even if it were his duty to get a transfer ticket, that does not affect the question whether or not he did, or could, become a *bona fide* passenger on another car. 26 L. R. A. 222. Error can not be predicated on modification of an instruction which the appellant was not entitled to have given. 70 Miss. 275; 160 Ill. 429. If appellant objected to the instruction as modified, it should have presented one in the form desired, and excepted to the refusal to give it as asked. 26 L. R. A. 223; 60 Ark. 619; 56 Ark. 602; 31 Ark. 167.

If an expulsion was not justified, both the servant and the carrier are liable. 18 N. Y. Supp. 760; 56 Ark. 52; 58 Ark. 140; 62 Ark. 259; 67 Ark. 54. A carrier can not arbitrarily eject a person received as a passenger. 67 Ark. 396.

3. The verdict was not excessive. 71 Ill. 104. In cases of this kind exemplary damages may be awarded against a common carrier, even though not permissible against corporations generally. Mechem on Agency, 603, § 751; 56 Ark. 51; 58 Ark. 140; 67 Ark. 144; 70 Ark. 144; 72 Ark. 661. See also 42 Ark. 329; 1 Joyce on Dam. § 139; 1 Sedgwick on Dam. § 380; Watson on Dam. § 730; 2 Am. Rep. 51; 2 Wood on Ry. Law, 1242, 1243.

WOOD, J. (after stating the facts.) Appellant, with commendable compactness, has comprehended what it desires to say upon the twenty-three assignments of error in its motion for new trial in three propositions, viz.:

1. The verdict was excessive, exemplary damages being erroneously allowed. 2. Improper admission of evidence of false arrest and imprisonment. 3. Error in modifying the 10th prayer of appellant for instruction.

1. The court gave at the instance of appellee the following instruction:

"6. The court instructs the jury that if you find for the plaintiff on the first or second paragraph of his complaint, or on both, you should assess his damages at such sum as you believe from the evidence would be a fair pecuniary compensation to him for the inconvenience, injured feelings, indignity and humiliation suffered by him, if any, by reason of his being expelled, under the circumstances he was, from defendant's car; and, in addition to that, if you believe from the evidence that the act of defendant's conductor in expelling or causing plaintiff to be expelled from said car was malicious and oppressive, then you may add such sum as you may think proper, under the circumstances, by way of punitive or exemplary damages as a punishment for the wrongful conduct of defendant's conductor."

The court refused to give instructions 14 and 15, asked by defendant. They are as follows:

"14. You are instructed that the plaintiff is not entitled to recover exemplary damages in this case.

"15. A street railway company is not liable in exemplary damages for the wrongful act of its employees in ejecting a passenger from its car, in the absence of proof of want of care in the selection of such employees and of authority given it for the commission of the act, or ratification thereof after its commission."

In *Foster* v. *Pitts*, 63 Ark. 387, this court had under consideration the question of whether or not an individual was liable in punitive damages for the malicious acts of his agent in the scope of the agent's authority, and the court said: "When an agent of an individual acts maliciously, he is presumed to act without authority; and while the agent is liable, the principal is not, for punitive damages, unless it appear that he aided, adopted or ratified the malicious act of the agent with a full knowledge of the facts." We cited, to support that doctrine, the case of *Lake Shore, etc., Ry. Co.* v. *Prentice*, 147 U. S. 107, where it is said: "Exemplary or punitive damages, being awarded not by way of compensation to the sufferer but by way of punishment of the offender, and as a warning to others, can only be awarded against one who has participated in the offense. A principal,

therefore, though of course liable to make compensation for injuries done by his agent within the scope of his employment, can not be held liable for exemplary or punitive damages, merely by reason of wanton, oppressive or malicious intent on the part of the agent. * * * The rule has the same application to corporations as to individuals. This court has often, in cases of this class, as well as in other cases, affirmed the doctrine that for acts done by the agents of corporations, in the course of its business, and of their employment, the corporation is responsible, in the same manner and to the same extent, as an individual is responsible under similar circumstances."

Counsel for appellant rely upon these cases to support their contention that exemplary damages could not be awarded in this case, and that the court erred in giving the instruction for appellee and in refusing the prayers of appellant, *supra.* But the above cases are not applicable here. The Supreme Court of the United States makes no distinction between individuals and public carriers of passengers, in holding that such corporations, like an individual, can not be held liable in exemplary damages for the malicious acts of its agents which it had not authorized or ratified. *Lake Shore, etc., Ry. Co.* v. *Prentice, supra.* This court, while enforcing the above rule as to individuals (*Foster* v. *Pitts, supra*), has applied a different rule in the case of railroad corporations. Such corporations are liable in punitive damages for the wilful, wanton, and malicious conduct of their agents and servants in the line of their duties. *Citizens' Street Ry.* v. *Steen,* 42 Ark. 321; *Railway* v. *Hall,* 53 Ark. 10; *Railway Company* v. *Davis,* 56 Ark. 51; *Fordyce* v. *Nix,* 58 Ark. 136; *St. Louis, I. M. & S. Ry. Co.* v. *Power,* 67 Ark. 142; *St. Louis, I. M. & S. Ry. Co.* v. *Wilson,* 70 Ark. 136-144.

This rule as to carriers of passengers is grounded on public policy. Chief Justice Wood in the case of *Pullman Palace Car Co.* v. *Lawrence,* 74 Miss. 803, declares the rule and the reason therefor as follows: "It is argued that vindictive damages are in their nature penal, and that no one should be liable to punishment unless the act complained of is his own act, made so by his authorization or ratification of it when committed by the servant, and that it is illogical for the courts to do anything punitive in character unless the master is directly and personally responsible

36

for the very act complained of. The sufficient answer to this contention is that the judge-made law of punitive damages is not the result of logic, but of public necessity, as text writers and courts have repeatedly shown. If corporations—artificial beings who can act only through agents and servants in their varied and multitudinous and constantly recurring business dealings with the public—can never be held liable in punitive damages for the acts of their servants unless expressly ratified by them, no matter how gross and outrageous the wrongful act of the servant, we feel perfectly safe in declaring that no recovery for more than mere compensatory damages will ever again be awarded against corporations. Corporations never expressly authorize their servants to beat or insult or outrage those having business relations with them, and they rarely ratify such conduct. Having by the constitution of their being to act solely by agents or servants, they must, as matter of sound public policy, be held liable for all the acts of their agents and servants who commit wrongs while performing the master's business and in the scope of their employment, and this to the extent of liability for punitive damages in proper cases."

This doctrine, although apparently in conflict with the decision of the Supreme Court of the United States, is supported by the majority of the States that have announced a rule upon the subject, and is in accord with our own views, as announced in several cases, *supra*. In addition to these cases and the authorities cited in them, see 1 Joyce on Dam. § 139 *et seq;* Watson on Dam. and Personal Inj. § 730, and numerous authorities cited in notes. See also 2 Redf. Rys. § 203, note 1; Hutch. on Car. § 815; 2 Wood, Railroads (Minor's Ed.), pp. 1416-17.

Accepting appellee's version of the manner of his expulsion from the car by appellant's conductor, which the jury has done, the evidence was sufficient to warrant a verdict for punitive damages. Nor can we say that the amount was excessive.

While the verdict of the jury eliminated the charge made in the first count, still we are of the opinion that what took place at the depot between appellant's servants and appellee was admissible. What appellant's conductor said and did there tended to show the animus of his conduct at Main and Markham, where the last expulsion took place. The motive of the conductor when

he ordered the arrest of appellee at Main and Markham was of vital inquiry on the question of punitive damages, and the "frame of mind" he was in just the few minutes before at the depot, as evidenced by what he did and said there and then, tended to show the intent which characterized his act at Main and Markham. Accepting the statement of appellee as true, the conductor was angry at the depot when he found that appellee had moved his car, so much so that he was unnecessarily rude and insulting, and not disposed to receive explanations and amends, however reasonable and sincere. When appellee re-entered the car at Main and Markham, and asked appellant's conductor for a transfer, his uncivil reply and the peremptory manner in which he demanded that appellee be taken from the car showed that his anger, previously aroused, had not yet abated.

Looking at the testimony from the viewpoint most favorable to appellee, there was evidence to warrant the conclusion that appellant's conductor subjected appellee, one of its passengers, to humiliating insults and indignities in the presence of his family and friends. These were begun at the depot soon after appellee entered the car, and were repeated a short while after at Main and Markham. The jury might have found from the testimony that appellee was sober and well behaved throughout, that the movement of the car caused by the appellee was unintentional, and furnished no provocation whatever for the rough treatment he received at the hands of appellant's conductor.

The court properly instructed the jury upon the subjects of compensatory and punitive damages, and the jury were warranted in finding that the conduct of appellant's conductor in the line of his duty was wilful, wanton and malicious. Therefore we will not disturb the verdict. Nor can we say, in view of the duty of street car companies to protect its passengers from insult and injury, especially at the hands of its employees, that the verdict was excessive.

2. Appellant complains because the court permitted evidence showing that appellee was arrested at the instance of appellant's conductor and taken before the police court to be prosecuted for breach of the peace. The court properly sustained the demurrer to the third and fourth paragraphs of the complaint, which sought to hold appellant liable for the prosecution insti-

gated by its conductor against appellee for breach of the peace. *Little Rock Traction & Electric Co.* v. *Walker*, 65 Ark. 149. And the court erred in not sustaining the demurrer to the third paragraph before the evidence of such prosecution was admitted, and should not have permitted such evidence to go before the jury. The court, however, corrected the error, at first committed, before the cause was argued and submitted to the jury by this instruction, viz.:

"You are instructed that the plaintiff is not entitled to recover damages of the defendant company for his arrest and subsequent prosecution by the conductor, as charged in the third and fourth counts of his complaint, and you will therefore find in favor of the defendant on both of said counts."

Counsel urge that, in addition to this instruction, the court should have at least warned the jury not to consider such evidence in determining the questions submitted on the other paragraphs. If the counsel had so requested of the court, doubtless their request would have been granted. If they had made such specific request, and the court had refused to grant it, they would have more reason to complain here. True, they objected to the testimony at the time it was offered, and the court did not then discover the error of its admission. Afterwards, when the court sustained the demurrer to the third paragraph of the complaint, counsel did not then ask of the court to exclude the evidence here complained of; and when counsel in the instruction above called attention of the court to the error of permitting a recovery for the prosecution before the police court, the circuit court promptly granted the request. It appears to us that this instruction was intended by counsel and by the trial court to remove entirely from the consideration of the jury the evidence of the proceedings before the police court for any purpose whatever in the questions the jury were to determine. The evidence of this prosecution could only have been introduced as responsive to the third paragraph of the complaint; and when it was taken from the jury, as it was, by this instruction, everything connected with it and based on it went out with it.

The evidence, so far as it related to the arrest of the appellee on the car by the policeman at the request and direction of the conductor, was proper, for this was the method adopted by

the conductor for the ejection of appellee from the car, and was therefore an act in the scope of the conductor's employment.

3. Instruction number ten as asked by appellant* was obnoxious, in form, to the suggestions of this court in *Pacific Mutual Life Ins. Co.* v. *Walker,* 67 Ark. 147, and *St. Louis, I. M. & So. Ry. Co.* v. *Tomlinson,* 69 Ark. 489-97, inasmuch as most of the first part of the instruction submitted to the jury propositions as hypotheses that were not in dispute, or that did not and could not affect the question of appellant's liability or nonliability, and, as was said in *Ins. Co.* v. *Walker, supra,* "the incorporation of all of them in a single instruction tended to make it of unusual length and more or less confusing to the jury." But the fatal objection to the instruction is that it is based upon the theory that appellee never became a *bona fide* passenger, and was therefore not entitled to recover. We find no warrant in the pleadings or proof for the submission of such issue to the jury. Appellee in the first and second paragraphs of his complaint, upon which, and the answer thereto, the issue was made and the cause finally submitted, alleged that he "entered one of defendant's cars for the purpose of becoming a passenger thereon," and "that defendant undertook, and it became and was its obligation and duty, to safely transport and carry said plaintiff," etc. In the second

---

*Instruction number 10 asked by appellant was modified by the court by the addition of the words which appear in italics, viz.: "10. If you find from the evidence that when plaintiff left Choctaw Station and took passage for his home on another car than that which was under the control of Barger, and that in order to continue his journey to his home it became necessary for him to change cars at Main and Markham streets, and to obtain a transfer ticket to another car for that purpose, then he should have applied to the conductor of the car on which he was a passenger for such transfer. And if you further find from the evidence that plaintiff left the car on which he was a passenger at or near the transfer point and re-entered the car of which Barger was the conductor, not for the purpose of continuing his journey on Barger's car, but with the intention of continuing his controversy with Barger *with the expectation of being put off,* then he did not become a *bona fide* passenger on Barger's car even though he paid his fare to Barger, and the relation of carrier and passenger did not exist between him and the defendant company, and he can not recover damages *for wounded feelings and pain of mind* for being ejected by Barger at Main and Markham streets." (Reporter.)

paragraph of the complaint, upon which the jury based its verdict, it is alleged that appellee, "upon request of said conductor, duly paid his fare, and became a passenger thereon." There was no denial of these allegations in the answer. The question therefore of whether or not appellee became a passenger was not in issue, and appellant had no right to an instruction submitting that question to the jury. *Rust Land & Lumber Co.* v. *Isom,* 70 Ark. 99-103. But there was no evidence to support the theory that appellee was not a passenger.

The jury eliminated the first paragraph of the complaint, doubtless upon the idea that the appellee did not become a passenger until just before the car from which he was ejected had reached Main and Markham. Whether right or wrong in this, it is certain beyond controversy that appellee had become a passenger before he was ejected from appellant's car at Main and Markham. The testimony of appellant's conductor, after reciting what took place at the depot, is as follows: "He" (appellee) "got on another car, and when we arrived at about Scott street, my car stopped, and somebody got on. I was in the rear of the car, issuing transfers, and didn't know who it was. A paper boy came to me, and said a man in front wanted to see me. I went to the front, and met Dobbins. He turned his back as I came up, and I put my hand on his shoulder, and said 'Fare, please.' He replied that he had paid his fare on the other car, and I told him that he ought to have stayed on that car, and if he rode on my car he would have to pay again. He said 'All right,' and gave me his fare. I went back to issuing transfers, and he kept hallooing to me, 'Transfer; transfer!' I told him I would give him a transfer in a minute, and just to keep quiet. There were lots of people there, and he had plenty of time. He repeated his demand, and I said, 'There is a seat! For goodness' sake, sit down and keep quiet. And if you don't, I am going to have you taken off the car.'" This is all the evidence upon the subject. There is no room to contend, in the face of this evidence, that appellee did not become a passenger.

There is nothing in this evidence that justifies the conclusion that appellee boarded appellant's car at Main and Markham solely for the purpose of continuing his controversy with the conductor, and with no intention of becoming a passenger.

If appellee entered the car there with the intention of riding as a passenger, and paid his fare, which appellant accepted, he would be a passenger, even though he intended also to continue a controversy with the conductor. So the instruction was abstract and misleading, either with or without modification. But if it were correct, the modification only tended to make clearer the idea intended to be conveyed by it, namely, that if appellee entered the car for some other purpose than the *bona fide* purpose of becoming a passenger, and with the expectation of being put off, so that he might sue appellant for unlawful ejection, then appellant would not be liable.

The testimony for appellant shows the conduct of its conductor in quite a different light from the testimony of appellee. If the testimony of appellant is true, it exonerated the conductor, and should save appellant from liability. The jury, however, settled these disputed questions of fact; and as there were no prejudicial errors in the ruling of the trial court, its judgment must be affirmed. So ordered.

HILL, C. J., not participating.