DOBBINS *v.* LITTLE ROCK RAILWAY & ELECTRIC COMPANY.

Opinion delivered May 14, 1906.

1. EVIDENCE—RES GESTAE.—Where a complaint against a street railway company alleged an illegal ejection of plaintiff at a certain place, it was not error to refuse to permit a witness to testify as to the subsequent language and conduct of defendant's conductor, as indicating his temper and frame of mind at the time of the expulsion; nor was it error to refuse to permit such witness to prove that shortly after plaintiff was ejected the conductor acted in a rude and overbearing manner toward other passengers on his car. (Page 88.)

2. WITNESS—DEAF MUTE.—It was not an abuse of discretion to permit the testimony of a deaf mute to be given by means of the sign language through an interpreter, instead of through written questions and answers, where there was nothing to show that the latter was the best method. (Page 89.)

3. TRIAL—VIEW.—Where it was a material question whether the moving of the controller of a street car of a certain class by plaintiff on a certain occasion was accidental or intentional, it was not error to permit the jury to inspect a car and the controller thereon, it being shown that the controllers on all the cars of that class were alike. (Page 90.)

4. Appeal,—presumption.—Where the evidence is not set forth in appellant's abstract, it will be presumed on appeal that the court's instructions were based on the evidence. (Page 91.)

5. Same.—Where only part of the court's instructions are set forth in appellant's abstract, it will be presumed that the instructions objected to were cured by others which were given, unless those set out were so radically defective that they could not be corrected by others. (Page 91.)

6. Street railways—reasonableness of rules.—A rule of a street railway company prohibiting passengers from standing upon the front platform of a car is a reasonable one. (Page 93.)

7. Same—control over passengers.—Where several street cars are standing at a depot waiting for passengers from an incoming railway train, a passenger had no right to complain because he was directed to take passage in one car, instead of another, so long as there was no arbitrary, capricious or unreasonable discrimination shown. (Page 93.)

8. Same—ejection of passenger—damages.—Where a complaint against a street railway company sought recovery for an unlawful ejection, and there was evidence tending to show that on the occasion complained of the defendant's conductor used insulting and abusive language toward plaintiff, it was not improper to charge the jury that the plaintiff was not entitled to recover unless he was ejected. (Page 94.)

9. Same—authority of conductor.—A street car conductor, in prosecuting a passenger for disorderly conduct on his car, is acting beyond the scope of his employment. (Page 95.)

Appeal from Pulaski Circuit Court; *Edward W. Winfield,* Judge; affirmed.

### STATEMENT BY THE COURT.

The pleadings and so much of the evidence as has been abstracted shows that this is the same case as *Little Rock Ry. & Electric Co.* v. *Dobbins,* decided a few days ago, and this appeal is in fact but a cross-appeal from the rulings of the trial court against Dobbins (appellant here) in that case. There was a full abstract of the evidence in that case. In this record the appellant has his bill of exceptions to show that "the plaintiff, to sustain the causes of action severally set forth on the first, second and third paragraphs of his complaint and the issues in his behalf, introduced the following witnesses, towit: Arthur Pulliam, policeman; T. M. Clifton, sergeant of police; D. F. Dobbins, plaintiff; W. H. Blevins, I. T. Smith A. Ray, and W. E. Berthe."

The testimony of the witnesses is not set out *in extenso;* but this statement is made: "By the testimony of said witnesses the plaintiff produced evidence tending to prove the material allegations of the first, second and third paragraphs of his complaint. Appellant then sets forth certain specific things which he offered to prove, which the court refused to permit, to which ruling he excepted. These will be set forth and discussed in the opinion. The bill of exceptions then contains the statement that "defendant, to sustain the issues on its part, introduced a number of witnesses, by whose testimony it produced evidence tending to sustain the denials and allegations of its answer to the first, second and third paragraphs of plaintiff's complaint."

Only the instructions of the giving of which appellant complains are set out in appellant's abstract. For a statement of the issues, see *Little Rock Railway & Electric Company* v. *Dobbins,* 78 Ark. 553. Such other facts as deemed necessary are set forth in the opinion.

*W. L. Terry,* for appellant; *Walter J. Terry* of counsel.

1. It was error not to allow plaintiff to prove the temper of the conductor shortly after ejecting plaintiff from the car. 62 Ark. 259.

2. The testimony of the deaf mute witness should have been taken in writing, and not by means of sign language. 3 C. & P. 127.

3. It was error to send the jury to inspect the car and the operation of the lever, without proof that it was the same car from which plaintiff was expelled, or of its having the same mechanism except as to controller.

4. The court's instructions 4, 5, 6, 8 and 9 were erroneous. 26 L. R. A. 222; 65 Ark. 182.

5. The court erred in sustaining demurrer to third and fourth paragraphs of complaint. The case relied on by appellee, 65 Ark. 145, was an action for malicious prosecution, and is not in point. A common carrier is liable for illegal arrest and false imprisonment in a case like this. 35 W. Va. 588; 16 L. R. A. 137; 28 L. R. A. 691; 29 L. R. A. 467; 12 A. & E. Ry. Cas (N. S.) 263; 67 Ark. 55; *Ib.* 402. The same reasons that render a corporation liable for any torts by its agents

will render it liable for a malicious prosecution. 74 Ala. 89.; 57 Miss. 759; 130 Mass. 443; 32 N. J. L. 334. An agent who violates the duty which his principal owes to the passenger is to be deemed to have done so while acting in the course of his employment. Mechem on Agency, 583.

*Rose, Hemingway, Cantrell & Loughborough,* for appellee.

1. The evidence as to the temper of the conductor shortly after ejecting plaintiff from the car was not admissible because it was not a part of the *res gestae.* 51 Ark. 513; 52 Ark. 80; 43 Ark. 103; 48 Ark. 338; 58 Ark. 180; 66 Ark. 501; 72 Ark. 581.

2. In the absence of a statute upon the taking of deaf mutes' testimony, the common-law rule prevails. It is proper to have an interpreter for mutes. 17 Am. & Eng. Enc. Law (2 Ed.), 29; 20 Am. Dec. 90; 5 Blackf. 295; 108 Ind. 53; 78 N. W. 681; 39 S. C. 322. This rule prevails, though the mute be able to read and write. 5 Am. & Eng. Enc. Law (1 Ed.), 122, note 1; Chamberlayne's Best on Ev. 131. The court in its sound discretion must decide upon the necessity for an interpreter. 17 Am. & Eng. Enc. Law (2 Ed.), 29; 23 Mich. 253, and cases *supra.*

3. There was no error in permitting the jury to inspect the controller of the car. The controllers on all the summer cars were shown to be exactly alike. That on the particular car in question could not be shown because that car's number was not known. 11 Am. & Eng. Enc. Law (2 Ed.), 539; 109 Ill. 9.

4. There was no error in giving instructions 4, 5, 6, 8 and 9. 37 Ark. 591; 44 and 59 Ark. *supra;* 66 Ark. 46; 71 Ark. 317; Booth, Street Railways, § 357.

5. The demurrer was properly sustained to the third and fourth paragraphs of the complaint. Having no express authority from the company to cause an arrest and imprisonment, and no such authority being conferred by any rule of the company, the conductor in causing such arrest was acting without the scope of his real or apparent authority. 65 Ark. 149; 78 Md. 394; 34 Am. Rep. 311; 15 Fed. 200; 39 N. Y. 381; 43 La. Ann. 34; 56 Tex. 162; 6 Exch. 314; 7 *Ib.* 36; 2 L. R. Q. B. Cas. 534; L. R. 6 Q. B. 65; 1 Biddle on Ins. § 118.

Wood, J., (after stating the facts.) 1. Appellant complains

because the court refused to permit the witness Ray to answer the following question asked him by plaintiff's counsel: "Q. Well, after you passed Main and Markham, if you saw anything in the language or conduct of the conductor, Mr. Barger, that would indicate his temper or frame of mind, state what it was." And because the court also refused to permit plaintiff to prove by said witness Ray that, shortly after the plaintiff was ejected from defendant's car at the Choctaw depot, about three or four blocks from the depot, coming towards Main and Markham, the conductor acted in a rude and overbearing manner towards other passengers on the car, and especially towards this witness, indicating that he was in a very bad temper and disposition.

There was no error in this. It was not only after the alleged expulsion had taken place, but it is not pretended that the conduct of the conductor sought to be proved was directed toward appellant. We do not think that it in any manner tended to illustrate the conduct of the conductor towards appellant a short while before at the depot, a few blocks away. The alleged expulsion at the Choctaw depot was ended. The transaction was over. This testimony was no part of the *res gestae. Hot Springs St. Rd. Co.* v. *Hildreth,* 72 Ark. 572; *Little Rock Traction & Electric Co.* v. *Nelson,* 66 Ark. 501, and authorities cited. Had the alleged conduct been manifested toward appellant, and not towards other passengers, perhaps the case would have been different. *St. Louis & S. F. Ry. Co.* v. *Brown,* 62 Ark. 259, is not in point. There the transaction was not over. The conductor was re-entering the car, having just taken the passenger off. His temper toward the plaintiff (not another) was still in evidence.

2. It was not error to take the testimony of the deaf mutes through an interpreter by signs, instead of through written questions and answers. Having no statute upon the subject, the common-law rule prevails that such persons are competent witnesses where they have sufficient knowledge to understand and appreciate the sanctity of an oath. 1 Greenl. Ev. § 366; Starkie, Ev. 4, p. 393; *Snyder* v. *Nations,* 5 Blackf. 295; Chamberlayne's Best on Ev. p. 131.

Chief Justice Best, in *Morrison* v. *Lennard,* 3 C. & P. 127, in commenting upon the testimony of a deaf mute witness taken

through an interpreter by signs, said: "I have been doubting whether, as this lad can write, we ought not to make him write his answers. We are bound to adopt the best mode." But he continues: "I should certainly receive the present mode of interpreting, even in a capital case; but I think, when the witness can write, that it is a more certain mode."

Where a witness, on account of defective speech and hearing, is unable to communicate the facts within his knowledge to the jury in the ordinary way that can be understood by them, and where such knowledge may be imparted to the jury by means of sign language through an interpreter, it is proper to have such interpreter. The court should adopt the best method of having the facts in the knowledge of such witness imparted to the jury. Where the witness is a deaf mute, and can read and write, the trial court should have his knowledge of facts conveyed to the jury by means of written questions and answers, if it appears that this is the best method of eliciting the facts from the witness. But, if not, then by signs and oral interpretation. The matter is within the sound discretion of the trial court, who must determine, in the first place, as to the necessity for an interpreter, and, in the next place, the best method of arriving at the knowledge of the witness, and of imparting that knowledge to the jury. The discretion of the trial judge, however, is not to be exercised arbitrarily. It will be controlled and corrected, when abused to the injury of litigants. *Skaggs* v. *State,* 108 Ind. 53; 17 Am. & Eng. Enc. Law (2 Ed.), p 29; 5 Am. & Eng. Enc. Law (1 Ed.), 122, note 1; *State* v. *DeWolf,* 20 Am. Dec. 90; *State* v. *Nelson,* 39 S. Car. 322; *Swift* v. *Applebone,* 23 Mich. 253; Wigmore on Ev. § 811; Chamberlayne's Best on Ev. p. 131.

While the objection of appellant stated that the evidence of the deaf mutes "could be written," there was nothing to show that this would have been the best method; nothing to show how well the witness could write, or that an oral interpretation by means of sign language was not a better method than by written questions and answers. In the absence of some such showing, it will be presumed that the court adopted the best method.

3. There was no error in permitting the inspection of a car and the controller thereon, since the testimony shows that all the controllers on the summer cars were "built exactly alike," that

the "controllers were the same, the same mechanism." The court adopted the best method of giving the jury an idea of the working of the controller. It would not have been improper to have had the controller itself, or one "exactly like it," exhibited before the jury, and to have explained to them the effect of moving same. *A fortiori,* was it not improper to have such controller examined on the car. This was practicable, and certainly gave the jury the clearest idea obtainable as to how the controller could be moved and the effect thereof on the movement of the car.   11 Am. & Eng. Enc. Law, 539, and authorities cited. It would the better enable the jury to determine a pertinent question in the case, viz.: as to whether or not the moving of the controller was accidental as claimed by appellant or intentional as claimed by appellee.

We find no error in the giving of instructions for defendant. (Reporter set out in note numbers 4, 5, 6, 8 and 9).*   None of

---

*The instructions given for defendant were as follows:

"4.   You are instructed that it is the duty of one who becomes a passenger on a street car to conduct himself in an orderly manner, and to refrain from interfering with the apparatus or machinery of the car; and if you find from the evidence that plaintiff knowingly and willfully failed to perform his duty in this respect, then the conductor or employee in charge of the car was authorized to eject him from it.

"5.   If you find from the evidence that plaintiff, at the time he entered defendant's car at Choctaw station, knowingly or willfully interfered with the apparatus or machinery on said car, or conducted himself in a disorderly manner, and because of such conduct the conductor ejected him from the car at said station, he can not recover damages for such ejection.

"6.   A regulation forbidding passengers to stand upon the front platform is a reasonable and proper one. It is the duty of a passenger who is standing on the platform to go inside the car, when requested so to do by a person having charge of the car, if there is standing room inside, although there are no vacant seats; and if a passenger refuses to comply with such request when there is room inside the car which can conveniently be reached, the servants of the company may lawfully eject him from the car. If, therefore, you find from the evidence that when at the Choctaw station the conductor requested the plaintiff to go inside of the car, and there was standing room therein, and the plaintiff refused to comply with said request, then the conductor was justified in ejecting plaintiff from the car, and he can not recover damages for such ejection.

"8.   If you find from the evidence that several of defendant's cars were standing at Choctaw station, waiting to be loaded with passengers

the evidence in favor of the appellee upon which these instructions might have been grounded is abstracted, and there is no statement in the record to indicate that there was no evidence to warrant such instructions. We must therefore assume that the instructions were not abstract. And, since the appellant has not abstracted the other instructions that were given on behalf of appellee and those that were given in his own behalf, we must assume that the instructions given, in the particulars of which appellant complains, were cured by others, unless the instructions as given were so radically defective that they could not be corrected by others. *St. Louis, I. M. & S. Ry. Co.* v. *Boyles,* 77 Ark. 374, and authorities there cited.

Instructions four and five told the jury, in substance, that it was the duty of one who becomes a passenger on a street car to conduct himself in an orderly manner, and to refrain from interfering with the apparatus and machinery of the car; and that, if appellant willfully and knowingly interfered with the apparatus and machinery of the car, and conducted himself in a disorderly manner, appellee's conductor was justified in ejecting him from the car. The instructions are faulty in that they do not more specifically and clearly define what would be disorderly conduct in a passenger justifying his expulsion from a car. What the conductor might consider disorderly conduct might not in law be such as to warrant him in ejecting a passenger for such conduct. Likewise, the instructions should have been

---

returning from the picnic, and that while so waiting plaintiff entered the car of which Barger was the conductor, and after he had entered the car became involved in a controversy with Barger and voluntarily left the car without having paid fare thereon, and went upon the street where Barger was standing, in order to maintain his contention, and, while thus standing in the street, he was informed by Barger that he could not ride on Barger's car, and was directed to take passage on another car, such conduct of Barger did not constitute an ejection of plaintiff from the car, and he is not entitled to recover damages on account thereof.

"9. If you find from the evidence that plaintiff was not ejected from the car while at the Choctaw station, then he can not recover any damages from the defendant company for humiliation or feelings injured because of insulting and abusive language uttered against him by the conductor, if you should find from the evidence that plaintiff used insulting or abusive language to him." (Reporter.)

more specific in defining the extent and character of interference by a passenger with the apparatus and machinery of a car that would call for his ejection therefrom.

But these were mere verbal omissions which the evidence or other instructions might have supplied, rendering the instructions proper, or, if not, harmless. For instance, suppose the proof showed that appellant had taken hold upon the controller and was undertaking to run the car, or that he became "indignant" and used "harsh and offensive language" toward appellee's conductor, and "of his own motion," as the answer alleges, "took another car." If such was the evidence, it is clear that the instructions would not have been erroneous—much less prejudicial. Then, too, the court may have defined in other instructions the kind of disorderly conduct and the extent of interference with furniture and apparatus by a passenger that would warrant his expulsion from the car.

Instructions six and eight are not sufficiently abstracted by appellant to enable us to intelligently pass upon them. Appellee, however, supplies this omission to abstract by setting out the instructions in full. Assuming that there was evidence upon which to base them, they were correct declarations of law.

Assuming, as we must, that the evidence showed that the appellee had a rule prohibiting passengers from standing upon the front platform, such a regulation was a reasonable one. The presence of passengers upon the front platform might greatly interfere with the motorman in the discharge of his duties, and greatly endanger the lives of the passengers as well as the property of the company. Booth, Street Railways, § 357.

If the facts assumed in the eighth instruction existed, appellant was not denied the right to ride upon appellee's car, and was not therefore ejected therefrom. Where there is a train of cars for passengers, all of equal and sufficient accommodation, a passenger has no right to insist upon riding upon any particular car. The disposal of passengers upon the cars (conforming with statute as to separate races) must rest with the company, and, so long as its conduct in this respect is not arbitrary, capricious, unreasonable and discriminatory, it incurs no liability to a passenger who refuses to conform to its requirements.

The ninth instruction·was not erroneous. As we construe the first count of appellant's complaint, the cause of action is the ejection of appellant from appellee's car. That was the physical injury alleged to have been suffered by appellant, and the rehearsal of the abusive and insulting language used by appellee's conductor was for the purpose of showing the aggravating circumstances under which the expulsion took place. The purpose of this was to show that the conduct of the conductor in making the alleged ejection was wilful, wanton and malicious, and thus to furnish the basis for punitive damages. If we are correct in our interpretation of this count, the ninth instruction but confined the right of recovery to the cause of action stated. The complaint is certainly susceptible of that construction. It is manifest from the instruction that the court so treated it, and here again it is impossible, in the absence of an abstract of the instructions that were given for appellant, to determine whether or not the giving of this instruction was error, even if the court erred in treating the first count of the complaint as a cause of action solely for wrongful ejection. For it may be that the instructions which appellant asked, and which the court gave, would show that appellant himself went before the jury on the first count only upon the theory of an unlawful ejection. If so, then there could be.no error prejudicial to appellant in the court telling the jury that if there was no ejection there could be no recovery for insulting and abusive language.

5. In *Little Rock Railway & Electric Company* v. *Dobbins*, 78 Ark. 553, we said: "The court properly sustained the demurrer to the third and fourth paragraphs of the complaint, which sought to hold appellant liable for the prosecution instigated by its conductor against appellee for breach of the peace." This was said in disposing of the contention of appellant railway in that case that the court erred in permitting evidence of the arrest and prosecution of Dobbins (appellee in that case) to go before the jury. We further said: "The evidence, so far as it related to the arrest of the appellee on the car by the policeman at the request of and by the direction of the conductor, was proper, for this was the method adopted by the conductor for the ejection of appellee

from the car, and was therefore an act in the scope of the conductor's employment." This disposes of the contention of appellant here that the court erred in sustaining the demurrer to the third and fourth paragraphs of the complaint.

Appellant was permitted to get the benefit of the fact that he was arrested on the car, in the consideration of the second count of his complaint, and it is evident that the jury took such arrest into consideration, for otherwise there was no semblance of justification for the amount of compensatory, much less punitive, damages which the jury assessed. But for the fact that the arrest was proper for them to consider, and that they evidently did consider same in returning their verdict, we should not have sustained the same for the amount rendered.

In sustaining the demurrer to the third and fourth paragraphs of the complaint the. court below treated them as setting up a cause of action for the false imprisonment and malicious prosecution of Dobbins instigated by the railway company's conductor, whch was beyond the scope of his employment, not authorized or ratified by the company, and for which it is therefore not liable. This is in accord with *Little Rock Traction & Electric Company* v. *Walker,* 65 Ark. 149. See also authorities cited in appellee's briefs on the question.

Finding no prejudicial error, the judgment is affirmed.