PINE BLUFF & ARKANSAS RIVER RAILWAY COMPANY
*v.* WASHINGTON.

Opinion delivered January 4, 1915.

1. MASTER AND SERVANT—TORTS OF SERVANT—LIABILITY OF MASTER—CORPORATION—EXEMPLARY DAMAGES.—A corporation may be held liable to exemplary or punitive damages for such acts done by its agents or servants acting within the scope of their employment as would, if done by an individual acting for himself, render him liable for such damages.

2. MASTER AND SERVANT—MALICIOUS TORTS OF SERVANT—LIABILITY—PUNITIVE DAMAGES.—Punitive damages may be awarded against a railway corporation for the wanton and malicious torts of its servants, although the corporation, aside from the conduct of its servants, may be entirely blameless.

3. DAMAGES—PERSONAL INJURIES—PERMANENT INJURY.—Plaintiff was injured by being shot by defendant railway company's servant. The evidence showed that she was confined to her room over a month, and seven months thereafter, at the date of the trial, she suffered great pain and could not raise her arm. *Held,* under the evidence the court was warranted in submitting to the jury the issue of a recovery by reason of pain and suffering endured, and to be endured in the future.

4. MASTER AND SERVANT—LIABILITY FOR SERVANT'S WILFUL TORT—EVIDENCE OF DISCHARGE.—In an action against a railway company for damages resulting from the wilful and malicious tort of its servant, it is not necessary for the plaintiff to prove that the railway company authorized the malicious act of the servant or ratified it, and therefore testimony as to when the railway company discharged the servant after the commission of the tort is immaterial.

5. DAMAGES—MALICIOUS TORT—COMPENSATORY DAMAGES.—Where plaintiff, a passenger on defendant's train, was suddenly and unexpectedly shot, by defendant's brakeman, her arm being broken, resulting in her suffering great pain, and depriving her of her ability to work, compensatory damages in the sum of three thousand dollars are not excessive.

6. DAMAGES—MALICIOUS TORT—PUNITIVE DAMAGES.—Under the above facts, punitive damages in the sum of two thousand dollars, held not to be excessive.

7. MASTER AND SERVANT—MALICIOUS TORT OF SERVANT—LIABILITY—DUTY TO ALL PASSENGERS.—A railway company will be liable to a passenger for punitive damages, when the passenger, a woman, was shot by defendant's servant, without reason or justification, although illicit relations had existed between the plaintiff and defendant's servant. Plaintiff had the same right to protection that any other passenger had.

Appeal from Jefferson Circuit Court; *Antonio B. Grace,* Judge; affirmed.

### STATEMENT BY THE COURT.

Tom Jackson, a brakeman for the Pine Bluff & Arkansas River Railway Company, shot Lizzie Washington with a pistol while she was riding in a passenger coach of the railway company. Lizzie Washington instituted this action against the railway company to recover damages therefor. She testified substantially as follows:

The Pine Bluff & Arkansas River Railway Company operated a train from Pine Bluff to Reydel. I lived at English. On the 22d day of December, 1913, I had been to Pine Bluff and was returning home in the afternoon as a passenger on the defendant's train. I had paid my fare and the conductor had taken up my ticket. Tom Jackson was the brakeman on the train and he came up to me and asked me to go to Reydel with him that night and stay with him. I told him I was not going with him any more and he said that "If I didn't do him no good I wouldn't do no other —— —— —— —— no good." He then rushed out of the car and into the baggage car and came back and said: "Lizzie, I want you to go to Reydel with me." I told him my business was urgent and I couldn't do it. He then said, "You can go with me, you —— —— —— —— ——, or I am going to pay off with you." He immediately pulled his pistol out of his pocket and shot me. I was sitting down at the time and when I saw him draw his pistol I fell backward and threw up my hands. The pistol ball went through my arm and broke it.

The plaintiff admitted that she was ordinarily termed "the woman of Tom Jackson," and that she had told him she was going to quit him. She said that was why he shot her, and that he told her if she would not have him any more he would kill her.

Several other passengers detailed the shooting in substantially the same way that plaintiff did.

There was evidence tending to show that it was among the duties of brakeman Jackson to see to the comfort and safety of passengers riding in the coach in which he shot plaintiff.

Jackson testified in behalf of the railway company substantially as follows:

On the evening of the shooting a fellow was on the train cutting up and plaintiff sent for me to put him out. I got the man and carried him into the baggage car and I went back and asked the plaintiff if she didn't want to go to Reydel and spend the night with me. She replied that she had other business and I then said, "You are fixing never to walk with me any more." A little later I asked her why she had quit sending my breakfast to me and she replied that she had other business. I then said, "————— ————— your other business; you are always telling me that," and I went and got a pistol which Mr. Hammett had given me to carry to Pine Bluff to have repaired and came back where plaintiff was sitting and took the pistol out of my pocket and attempted to stick it in her muff, meaning for her to return it to Mr. Hammett. The pistol was discharged accidentally and I never had any intention of shooting her.

The jury returned a verdict in favor of the plaintiff for compensatory damages in the sum of $3,000; and for exemplary damages in the sum of $2,000. From the judgment rendered the defendant has duly prosecuted an appeal to this court.

*S. H. West* and *Bridges & Wooldridge,* for appellant.

1. A carrier is not liable in exemplary or punitive damages for the wanton and malicious assault on a passenger by its servant acting within the scope of his au-

thority, which it has in no way antecedently authorized or subsequently ratified. 147 U. S. 101, 106; 80 S. E. (Va.) 749, 751; 7 Ala. 622; 56 N. Y. 44, 47, 48; 63 Ark. 387, 393; The State Rights, Crabbe, 22, 47, 48; The Golden Gate, McAllister, 104; 7 Cal. 118; 13 La. Ann. 445; 16 Mich. 447; 69 Ill. 478, 481; 75 Ill. 167; 115 Ill. 331; 7 Ala. 622, 629; 69 Ala. 373, 379; 57 Wis. 570; 21 Vroom (N. J.) 481; 99 Pa. St. 63; 72; 1 Exch. 131, 140; 26 Upper Can. Q. B. 422; 13 Cyc. 114.

2.   The rule has been stated that if the act was wanton and wilful, or with such gross want of care and regard for the rights of others as that malice may be presumed, the court will instruct the jury that they may find, in addition to a reasonable compensation for the injury, such sum in damages as the circumstances may justify. 42 Ark. 321, 328; 53 Ark. 7; 84 Ark. 241; 87 Ark. 123, 127. Testing the evidence by this rule, it is insufficient to sustain a verdict for punitive damages. There is lacking ''that element of wilfulness or conscious indifference to consequences from which malice may be inferred.'' The shooting was plainly the result of a lovers' quarrel, a quarrel between a man and his paramour, taking place under the stress of undue excitement of passion, and appellee by her own conduct is equally responsible with the brakeman therefor. Nothing which might have been done by appellant would have prevented or tended to prevent the injury. When a passenger gives a carrier's employee cause for irritation, and his conduct is such as would in a measure excuse the acts of the employee, and is a natural result of the passenger's own conduct, punitive damages should not be awarded. 87 Ark. 123, 127; 41 Ark. 295, 299; 94 Wis. 549.

3.   In charging the jury the court erred in failing to instruct them that, before appellee could recover, they must find that the brakeman was acting within the line of his employment at the time of the shooting or assault. 84 Ark. 193; 99 Ark. 233, 235; 103 Ark. 362, 366.

4.   The exemplary damages awarded are excessive. Watson on Personal Injuries, § 714; *Id.* § 741; 24 Wis. 183, 187; 132 S. W. 503.

5. Appellant's reasons for discharging the brakeman constituted a fact which legitimately might have been considered by the jury in mitigation of punitive damages, and the court erred in excluding proof thereof. Watson on Pers. Injuries, § 737; 68 Me. 279; 8 W. & S. (Pa.) 189.

6. There was no evidence that the injury to appellee was of a permanent character. It was error, therefore, to instruct the jury that compensatory damages might be awarded where "the injury appears to be of a permanent, continuing character." 109 Ark. 29, 31; 106 Ark. 177; 163 S. W. 107.

7. The verdict both for actual and compensatory damages, is grossly excessive. 148 S. W. (Ark.) 261; 90 Ark. 107; 102 Ark. 499; 98 Ark. 425; 87 Ark. 109.

*T. Havis Nixon* and *Coleman & Gantt,* for appellee.

1. No antecedent authority nor subsequent ratification need be shown to hold a railroad company liable in punitive damages for the malicious acts of its agents, in this State. 7 Labatt, Master & Servant (2 ed.), § 2554, note 4; 57 Me, 202; 36 N. H. 9; 78 Ark. 553, 561; 42 Ark. 321; 56 Ark. 51; Watson, Pers. Injuries, § 730; *Id.* § 731; 147 U. S. 101; 3 Moore on Carriers (2 ed.), 1725, 1726; 82 Ark. 289.

2. The evidence is sufficient to sustain the verdict for punitive damages. The court's instructions to the effect that "if you find that the assault was wilful, wanton, malicious and without cause, then you may award to the plaintiff, in addition to actual and compensatory damages * * * such further sum, *commensurate with the wrong done,* as in your opinion the evidence will justify by way of punitive damages," contains all the elements which this court has said should be given in an instruction bearing on punitive damages. 87 Ark. 127. See also 83 Ark. 9; Watson Pers. Injuries, § 722; *Id.* § 719; 53 Ark. 53 Ark. 7; 59 Ark. 215.

3. In reply to appellant's objection that the court in its instruction should have told the jury that it was necessary for them to find that the brakeman was acting

within "the scope of his employment," etc., it is sufficient to say that its answer raised no such issue; that it raised only a general objection to the instruction; that there was no dispute in the evidence on this point, and that appellant offered no correct instruction covering the point. The brakeman's own testimony shows that it was his duty to go through the train, "with opportunities to come in personal contact with passengers," and that he had duties to perform with reference to their comfort and safety. 82 Ark. 289; 78 Ark. 553; 54 L. R. A. (Ala.) 752; Labatt, M. & S., § 2459; 103 Ark. 361, 367.

4. The exemplary damages awarded in the verdict are not excessive. 103 Ark. 369-370; 130 Ky. 759.

5. The court correctly excluded the testimony offered by appellant to show its reasons for discharging the brakeman. This court has repudiated the doctrine under authority of which appellant sought to introduce this testimony. *Supra,* div. 1. Moreover, appellant did not show what the witness would have testified had be been permitted to answer. 87 Ark. 123.

6. If the appellant desired to object to the use of the language "if the injury appears to be of a permanent, continuing character," on the ground that there was no evidence of a permanent injury, it should have called the court's attention to it by specific objection. 109 Ark. 569, 572.

7. The actual and compensatory damages awarded are not excessive. *Supra;* 38 L. R. A. 432; 65 Pac. 241.

HART, J., (after stating the facts). (1) It is earnestly insisted by counsel for the defendant railway company that a carrier is not liable for exemplary or punitive damages for a wanton and malicious assault upon a passenger by a servant acting within the scope of his authority which it has in no way antecedently authorized or subsequently ratified. There is a division of authorities on this question and counsel have cited a number of authorities to sustain their position, but we do not deem it necessary to discuss or review them for the reason that we have already decided adversely to their contention. This court has adopted what is usually called

the rule of general liability, which has been defined as follows: "A corporation may be held liable to exemplary or punitive damages for such acts done by its agents or servants acting within the scope of their employment as would if done by an individual acting for himself, render him liable for such damages. See case note to 48 L. R. A. (N. S.) page 38.

In the case of *Little Rock Railway & Electric Co.* v. *Dobbins*, 78 Ark. 553, the court held: "A corporation, as distinguished from an individual, is liable in punitive damages for the malicious acts of its agents, done within the scope of their employment, although such acts were not ratified by it."

In that case the allegations and proof on the part of the plaintiff were that a street car conductor maliciously and without provocation subjected one of defendant's passengers to humiliating insults and wrongfully caused him to be arrested and removed from the car in which he was riding.

In the case of *St. Louis, I. M. & S. Ry. Co.* v. *Dowgiallo*, 82 Ark. 289, this court held: "A railroad company is liable for an assault upon a passenger committed by a brakeman having duties to perform with reference to the comfort and safety of passengers, even though in making such assault, the brakeman departed from his line of duty."

In that case, according to the testimony of the plaintiff, the brakeman on the train came into the car and cursed him and beat him over the head with a lantern. No provocation was given for the assault.

In the case of *St. Louis, I. M. & S. Ry. Co.* v *Robertson*, 103 Ark. 361, one Clint Ruff boarded a freight train which did not carry passengers and the conductor, in attempting to eject him from the train, shoved him from the train into a lake where he was drowned. The testimony on the part of appellee in that case tended to show that the conductor had a gun and that he acted in a malicious and wanton manner in ejecting Ruff from the

train. A recovery for punitive damages in the sum of $2,000 was sustained.

(2) It may, therefore, be taken as settled law in this State that punitive damages may be awarded against a railway corporation for the wanton and malicious torts of its servants, although the corporation, aside from the conduct of its servants, may be entirely blameless. The reason for adopting the rule was given in the cases above cited and the authorities on both sides of the question were there thoroughly discussed. Therefore no useful purpose could be served by again discussing the reasons for the rule.

Counsel for the defendant assigns as error the action of the court in giving the following instruction: "Compensatory damages are such sums as may be awarded as compensation for such physical pain and mental anguish as plaintiff may have sustained by reason of the injury, and for loss of time or diminished earning capacity; and, where the injury appears to be of a permanent, continuing character, for such pain and suffering as may be endured by reason thereof in the future."

The error complained of in this instruction is that the court submitted to the jury the question of the permanent injury of the plaintiff when there was no testimony that her injuries were permanent.

In the same connection, however, the court gave the following instruction: "If you further find from a preponderance of the evidence that she suffered physical pain and anguish by reason of such injury, and that she was deprived of the ability to work and earn money for a period of time, you should award her such sums as the evidence shows would be a fair and reasonable compensation for such physical and mental pain and diminished earning capacity."

(3) According to the record the appellee was shot by the brakeman on the 22d day of December, 1913. Her arm was broken by the shot and she was confined to her bed helpless for three weeks and was confined to her room for about two and one-half months after the shooting. The case was tried on the 27th day of April, 1914, and at

that time the plaintiff was not able to use her arm to any extent and still suffered pain from it. According to her testimony she could not raise her arm naturally and any motion of the arm hurt her. Under these circumstances the court was warranted in submitting to the jury the question as to how much she would be entitled to recover by reason of pain and suffering endured and to be endured in the future. It will be noted that in the part of the instruction complained of the court used the language, "of a permanent, continuing character." We do not think, when the instruction is construed as a whole, that it meant to tell the jury that it might find for the plaintiff for a permanent injury but only for such time as in the judgment of the jury, from the evidence, the plaintiff would suffer pain in the future. This is shown by the other instruction on the same subject which we have set out above.

If counsel for the defendant thought the instruction susceptible of the construction now placed upon it they should have made a specific objection to the instruction and doubtless the court would have changed the language so as to conform to that view. Not having made a specific objection, counsel for defendant are not now in an attitude to complain of the action of the court in giving the instruction.

(4)   Counsel for the defendant also insists that the court erred in refusing to permit them to show when the brakeman was discharged by the railway company after the shooting. There was no error in this. The retention of a servant in one's employment after knowledge that his tortious conduct on the occasion in controversy was wilful and malicious would tend to prove ratification. But, as we have already seen, in this State, it is not necessary to prove that the railway company authorized the malicious act of the servant or ratified it, and on that account the testimony is immaterial.

(5)   It is also insisted by counsel for the defendant that $3,000 for compensatory damages was excessive. We do not agree with them in that contention. The plaintiff was suddenly and unexpectedly shot by the brakeman of

the defendant on the 22d day of December, 1913, her arm was broken and she has suffered great pain therefrom. She was entirely helpless so that she could not move for three weeks, and was confined to her home two months and a half. At the time of the trial on the 27th of April, 1914, she was still suffering and said she had suffered from the time she was shot. She was unable to do any work, and could not raise her arm naturally at the time of the trial, and said that she could not even sweep with her injured arm. Prior to the time she was shot she had been earning ten to fifteen dollars a week sewing and dressing hair, but has been unable to follow her avocation since the shooting. Under these circumstances we can not say that the verdict for compensatory damages was excessive.

(6-7)    The jury also returned a verdict for $2,000 punitive damages, and under all the circumstances detailed, we do not think the amount was excessive. The same amount was allowed in the case of *St. Louis, I. M. & S. Ry. Co.* v. *Robertson, supra.* In that case the plaintiff was endeavoring to ride upon a freight train which did not carry passengers, and it was the duty of the conductor to eject him, but he did so in a wanton and malicious manner which resulted in the death of the person ejected. It is now contended by counsel for the defendant that in that case the conductor was acting directly in the line of his authority, and for that reason the amount recovered was held not excessive. We do not see any difference in principle in the two cases. Here it was the duty of the brakeman to look after the comfort and safety of the passengers and instead of doing this he wantonly and maliciously drew his pistol and shot the plaintiff. It is true that illicit relations had existed between the plaintiff and the brakeman, but this did not constitute any defense for shooting her. She had the right to the same protection at the hands of the railway company as any other passenger in the coach and the company, under the rule we have announced, is liable for the malicious act of its servant in shooting her.

It follows that the judgment will be affirmed.