## KATZ v. GOLDMAN.

Opinion delivered November 16, 1901.

ESTOPPEL—REPRESENTATION.—Where the husband and agent of a landlord, acting within the scope of his agency, directed her tenant to say to a firm of merchants that the rent would not exceed $50, and said firm, relying upon such statement, furnished supplies to the tenant, and took from him a mortgage of his crop as security, the landlord will be estopped, as to said firm, to claim that her lien as landlord exceeded the sum mentioned.

Appeal from Arkansas Circuit Court.

GEORGE M. CHAPLINE, Judge.

*H. A. Parker* and *J. R. Parker,* for appellants.

The appeal was properly taken. Sec. 12, acts of 1887, pp. 74-79. This case is unlike the case in 33 Ark. 663. An application for an order is a motion. Sand. & H. Dig., § 5889; 41 Cal. 650; 3 Estee, Pl. & Forms, 146; 15 Am. & Eng. Enc. Law, 892. An affidavit must be filed to get attachment. 47 Ark. 31; 50 Ark. 444. The county and common pleas court is a superior court. 53 Ark. 476.

*J. P. Lee* and *M. J. Manning,* for appellees.

A principal is bound by the acts of his agent within the scope of his apparent power. 49 Ark. 320; 46 Ark. 214; 42 Ark. 97; 37 Ark. 47; 29 Ark. 99; 25 Ark. 261. Moses Katz was the general agent of his wife, and his false representations to Goldman & Co. are binding on her. 47 Ark. 148. No lien could be claimed by her in excess of that so represented to appellees. 60 Ark. 357; 31 Ark. 131; 52 Ark. 152; 1 Jones, Liens, § 579.

BATTLE, J. Mrs. Ernestine Katz leased a tract of land to Wesley Cartwright for the year 1894, and the lessee agreed to pay therefor $150, and she hired to him for the same year four mules and one wagon for $100. On the 1st day of November, 1894, she instituted an action against Cartwright to recover $193.38, the balance alleged to be due on the $150, $100, and $49 which she claims to be due for supplies furnished by her in 1894; admitting that she had received five bales of cotton, of the value of $107.62, in part payment of his indebtedness. At the same time she sued out an order of attachment against the crops raised on the land in 1894, and caused it to be levied upon 3,103 pounds of seed cotton and 175 bushels of corn of such crops and the cotton and corn still growing upon the land. Goldman & Co. filed in the action a complaint in which they claimed the property attached by virtue of a mortgage executed to them by Cartwright on the 5th day of March, 1894, to secure the payment of moneys that would be due them for supplies to be furnished to enable him to raise the crops attached. During the pendency of the action, Mrs. Katz died, leaving a last will and testament, by which she devised and bequeathed all her property of every description to her husband, Moses Katz, except $20, which she bequeathed to her adopted

children.  The action was revived in the name of Moses Katz, and he managed by some means to get possession of the property levied upon, and converted it to his own use.

The lease of the land, the hire of the mules and wagon, and the execution of the mortgage to Goldman & Company are undisputed.  The only question before the circuit court for decision was, was the plaintiff estopped from disputing the priority and validity of the mortgage and the right of Goldman & Company to be paid the amount due them for supplies out of the proceeds of the sale of the crops before any amount, except $50 for rent, should be paid to plaintiff?  Evidence was adduced in the trial of the action which tended to prove the following facts:  Moses Katz was the husband of Mrs. Katz, and had as complete control and management of her property and business as he had of his own.  Cartwright was indebted to her.  He was unable to make a crop without assistance in the way of supplies.  She could not furnish him.  Moses Katz, as her agent, sent him to Goldman & Company for the purpose of securing their assistance, and directed him to say to them that he had four head of cattle and two horses, and that his rent for 1894 would be only $50, and that, if they would agree to furnish him with supplies, he would mortgage to them his stock and his crops of 1894 to secure them in the payment of any debt he would owe for the supplies furnished according to the agreement.  He did as he was directed.  They relied and acted upon his representations, accepted his proposition, took a mortgage on his stock and crops of 1894, and furnished him with supplies, as they agreed to do, of the aggregate value of $246.51.  Cartwright paid the plaintiff, in cotton raised on the land he leased from her, at least $145.42.

According to this evidence, Moses Katz was authorized to do as he did.  Cartwright was indebted to Mrs. Katz, and the arrangement made with Goldman & Company was the most practicable means that could have been adopted to collect the money that Cartwright was or would be owing her, he being poor and unable to raise a crop without assistance in the way of supplies, and she being without the means to furnish them.  The effect of sending Cartwright to Goldman & Company and the directions to him was to authorize him to execute a mortgage to them, prior and paramount to her lien for rent and supplies, except as to the $50.  Cartwright having executed the mortgage, and Goldman & Company having accepted his representations as true, and, believing they were true,

furnished the supplies, without which Cartwright could not have raised the crops of 1894, Moses Katz and his wife are and were estopped from setting up her lien as superior to the mortgage, the $50 having been paid.

But the evidence referred to was contradicted by other evidence, and a question of fact was thereby raised, and it was submitted to the jury for decision upon the following instructions, which were given at the request of Goldman & Company:

"1.   The acts and statements of an agent pertaining to the business of his principal are the acts and statements of the principal, if made within the scope of the agency, and in law are as binding upon the principal as if made by him.

"2.   The jury are instructed that if they believe from the evidence that Moses Katz was the agent of Ernestine Katz, and, as such agent, and as an inducement to have Goldman & Company extend credit to the defendant, Wesley Cartwright, stated that he, the said Cartwright, as a tenant of Ernestine Katz, would not be required to pay more than $50 rent for the land in 1894, and that, by reason of said statement, the interpleaders, relying upon the truth thereof, sold to and furnished to the defendant goods and merchandise upon a credit, the plaintiff cannot deny the truth of said statement, and you will find for the interpleaders.

"3.   If the jury believe from the evidence that Moses Katz, the husband and agent of Ernestine Katz, directed the defendant, Wesley Cartwright, to represent to the interpleaders, Goldman & Company, that he would not owe the plaintiff exceeding $50 as rent for 1894, and that Cartwright did make said statements to W. L. Jefferies, a member of the firm of Goldman & Company, as an inducement to said firm to furnish him supplies and money on a credit during said year, and that Goldman & Company, acting and relying upon said statements and representations, took a mortgage upon the cotton and corn in controversy, the interpleaders, Goldman & Company, would be entitled to a verdict in this action, and the jury will so find.

"4.   The court instructed the jury that the interpleaders are entitled to recover if you believe from the evidence that the credit was extended and goods, wares and merchandise were sold to the defendant, Wesley Cartwright, by said interpleaders because of the statements and conduct of the plaintiff, Ernestine Katz, or her agents, and it is immaterial whether the defendant, Wesley Cartwright, owes a balance of rent or not.

"5.   Plaintiffs admit in the pleadings that they have received more than $50 from the defendant out of the crop raised on the land rented to the defendant, and the jury are instructed not to take into consideration any question of rent due plaintiffs, provided they believe from the evidence that Ernestine Katz, or her duly authorized agent, Moses Katz, represented to the interpleaders that only the sum of $50 would be due the plaintiffs for rent for the year 1894.

"6.   A general agent is one having authority to act in a certain capacity, and, unless it is restricted to a small limit, and the restrictions are known or ought to be known to third parties, carries with it all the ordinary powers incident to that character. It is a delegation to do all acts connected with the particular trade, business or employment; and if the jury believes from the evidence that Moses Katz bought and sold goods and property, signed his wife's name to contracts, checks, drafts, receipts, etc., made contracts in her name and for her in the leasing and renting of her land and stock, passed upon the sufficiency of her security offered to be given by persons indebted to her or to become indebted to her, took notes and mortgages for her, collected rents therefrom, executed receipts therefor, and fixed the dates at his own pleasure for the payment of the rents due her, and other matters, and to do and perform such general acts as he might deem proper in the transaction of his wife's business, such course of dealing with the public would constitute said Moses Katz a general agent, and any statement or representation made by him in reference to his wife's business would be binding upon her with the same effect as if made by the said Ernestine Katz."

And upon the following instructions given at the request of the plaintiff:

"The court instructs the jury that this is a suit in which the plaintiff brings action against the defendant, Cartwright, for rent of land and mules and supplies furnished to the defendant for 1894, and that Goldman & Company took a mortgage on defendant Cartwright's crop for the supplies furnished during the year 1894, and has interpleaded for said crop."

"The court further instructs the jury that a landlord's lien is superior to a mortgage lien, and the burden is on the plaintiff to show that Ernestine Katz was the owner of the land on which she claimed the rent, and, unless Moses and Leon Katz, the parties who represented her, made a waiver of said rent, or acted in a man-

ner to cause an estoppel—and before you can find that there was an estoppel you must find from the evidence that Goldman & Company were told by Moses and Leon Katz at the time they were acting that they were acting for Ernestine Katz, and not for themselves—you will find for the plaintiff."

The jury returned a verdict in favor of Goldman & Company, and fixed the value of the property in controversy at $277.94; and the court rendered judgment against Moses Katz and others for that amount, and Goldman & Company thereupon remitted the sum of $31.43, the amount of the judgment in excess of what was owing to them; and the plaintiff appealed.

Appellant insists that the instructions given at the request of Goldman & Company are erroneous, and should not have been given. But we find, when read together, and in the light of the evidence, as they should have been, that they contain no error prejudicial to the appellant. The instructions given at the instance of appellee were more favorable to him than they should have been, as it was not necessary to prove "that Goldman & Company were told by Moses or Leon Katz at the time they were acting that they were acting for Ernestine Katz, and not for themselves."

Judgment affirmed.