Opinion delivered March 16, 1931.

*A. G. Meehan* and *John W. Moncrief,* for appellant.

*M. F. Elms,* for appellee.

Smith, J. The evidence tending to support the judgment from which this appeal comes is to the following effect. Wilcox purchased a new automobile from W. J. Kirchoff, a dealer. He traded in an old car, for which he was allowed a credit of $580, and gave a note for the balance, payable $50.83 on the 14th of each month. The sales contract reserved the title to the new car until all the purchase price was paid. The sales contract provided that time was of the essence of the contract, and that, upon failure to pay promptly any monthly payment when due, all unpaid payments should, at the option of the seller, become due, and the right was reserved, upon

default of any payment, to take possession of the car and sell it, at either public or private sale, after advertisement of the sale and notice thereof to the purchaser. The sales contract and the note evidencing it were sold and assigned to Wm. Joerns. The first payment fell due April 14, and was made one day after it was due by a deposit of the amount thereof to the credit of Joerns at the bank with which he did business. Joerns had purchased other similar notes from Kirchoff, and these notes were deposited by Joerns at his bank for collection. The second payment was made after a delay of several days.

Default was made in the third payment, but Wilcox promised to make the payment when demand therefor was made upon him. The contract of sale provided for "servicing" the car for a period of ninety days free of charge, and Wilcox advised that the car required adjustments, and he delivered the possession of it to Kirchoff and Joerns for that purpose. After obtaining possession of the car they advised Wilcox that possession would be retained until the car had been paid for.

On June 26, 1930, Joerns and Kirchoff wrote Wilcox a letter reading as follows: "Since we have had your Studebaker Dictator sedan in our garage for ten days, held by Mr. Wm. Joerns, who holds the note and sales contract on same against you for settlement, we are asking you hereby to come in and take care of the settlement thereof. Mr. Joerns will offer the car for sale after the third of July if you do not settle for same by that time."

Wilcox construed this letter as a waiver of his default provided he met the payment then past due by July 3. He testified that he was told that he might make the payment notwithstanding his default, and on July 3 he attempted to make the payment, but neither Joerns nor Kirchoff were in the city. He then went to Joerns' bank and deposited to Joerns' credit $50.83 and received a deposit slip from the cashier, and the amount thereof was credited by the cashier to Joerns' account.

The cashier of the bank testified that it was the practice of the bank to receive similar deposits for the credit of Joerns, but he did not claim any authority for the bank to waive Joerns' right to declare the entire debt due, as the sales contract authorized the holder thereof to do.

When Joerns was advised of the deposit, he denied the authority of the cashier to receive it, and drew a check to Wilcox's order on the bank for the amount of the deposit and left the check at the bank, and he advised Wilcox of that action. Wilcox declined to accept the check to his order and demanded possession of the car, and when this was refused he brought suit for its value, alleging its wrongful conversion. In the meantime the car had been sold pursuant to the notice of sale, and, there being no other bidders, Joerns became the purchaser on his bid of $400.

The parties differ as to the meaning and purpose of the letter of June 26, set out above. The contention of Joerns and Kirchoff was and is that they intended by the letter to say that the entire balance due on the car had been declared due and that the car would be surrendered only on payment of the entire balance of purchase money.

The court took the view that the letter was ambiguous and might be construed as contended by Joerns and Kirchoff, but was also susceptible of the construction placed upon it by Wilcox, and the meaning of the letter was submitted to the jury as a question of fact.

The jury was told that if Wilcox had breached his contract he could not recover, but that Wilcox contended that, while he did not make the payment promptly when due, he had an agreement with Joerns for an extension of time, pursuant to which agreement he had deposited the amount of the payment then due to the credit of Joerns at the bank with which Joerns did business.

We think no error was committed in submitting this question to the jury, and that it was properly submitted.

The letter is ambiguous, especially when read in connection with Wilcox's testimony concerning it. There is no question but that Joerns had the right to declare the entire debt due and to demand full payment thereof, although the possession of the car had been obtained upon the representation that the "service" which it required would be rendered. Neither is there any question but that Joerns might have waived this right, if he, in fact, represented that he would do so, upon condition that the payment were made by July 3, and pursuant to that agreement the payment was made, the right to require full payment was waived. The verdict of the jury is conclusive of this question of fact.

The jury returned a verdict in Wilcox's favor for $300, and judgment was rendered on August 6, 1930, for that amount, and we are asked to reverse it for the reason that it is contrary to the undisputed evidence. But, for the reasons stated, we do not concur in that view.

After the rendition of the judgment Wilcox went to the bank on August 9, 1930, and obtained from the cashier the check to his order above referred to, which had been kept at the bank, and cashed it, and thereafter entered upon the margin of the judgment record a receipt therefor as a credit upon the judgment in his favor.

On October 1, 1930, thereafter a supplemental motion for a new trial was filed, in which it was recited that Wilcox had cashed the check after the rendition of the judgment in his favor, and it is now insisted that this action on Wilcox's part relates back to the date of the check and confirms his default and the right of Joerns to the possession of the car.

We do not think so. The rights of the parties had been adjudged, and that judgment was final and had not been superseded. Wilcox may not have had the right to proceed in this manner to collect his judgment, but that is not the controlling question. Wilcox's unauthorized appropriation of the proceeds of the check to the partial satisfaction of the judgment did not affect the

validity of the judgment. The judgment was a valid and final adjudication of the rights of the parties at the time the credit was indorsed on the margin of the judgment record, and it remained so until set aside by the trial court or reversed by us, and, as we have said, its enforcement had not been superseded.

An instruction was given on the court's own motion which reads as follows: "If you find for the plaintiff your verdict should be: 'We, the jury, find for the plaintiff,' and assess whatever damages you think he is entitled to under the proof." No other instructions on the measure of damages was asked or given, and only a general objection was made to the instruction as given.

It is very earnestly insisted that this instruction was erroneous and requires the reversal of the judgment, and the case of *Kansas City Southern Railway Co.* v. *Biggs,* 181 Ark. 818, 28 S. W. (2d) 68, is cited in support of that contention. The judgment was reversed in the case just cited for giving a similar instruction, which, like the one in the instant case, furnished no correct guide to the jury as to the measure of damages, but left the jury to its own contrivance. The instruction set out above is open to that objection and is erroneous for that reason, but, as we have said, no other instruction was asked or given on this subject, and only a general objection was made to it. The instruction does not contain any erroneous declaration of law and does not announce an improper rule by which to measure the damages. Its defect is that it does not furnish a correct guide to the jury as to the measure of damages, and in this respect is similar to the one which led us to reverse the judgment in the Biggs case, *supra.*

An examination of the record and of the briefs of opposing counsel in the Biggs case discloses the fact that a specific objection to the instruction was urged, for the reversal of the judgment, that it was open to the objection stated, and it was not argued that no such objection had been made in the court below. The instruc-

tion was defended upon the ground that it was a correct declaration of the law except that it was more favorable to appellant than the law required it should be.

Here our attention is called to the fact that no specific objection was made to the instruction in the court below, and such is the state of the record.

The practice in such cases was defined by Chief Justice Cockrill in the opinion on rehearing in the case of *Fordyce* v. *Jackson,* 56 Ark. 564, 20 S. W. 528, and it has never been our intention to depart from the rule there announced. On the contrary, we have consistently followed the rule there stated in all cases where our attention has been called to the absence of a specific objection to an instruction defective in form.

In the opinion on rehearing in the Jackson case, *supra,* after the judgment had been affirmed, the attention of the court was called to an instruction which had been given in the trial of that case which was defective in that it left to the jury to determine what were the elements of recovery, whereas that was a question of law for the court, and not a question of fact for the jury. In overruling the objection to the instruction, which the court did not question was well taken, the learned chief justice said: "It is not contended that the charge contains a misstatement of the law on the subject, but that it was the court's duty to go further than it did and make the charge more specific. It was the defendant's right to have the rule for the ascertainment of damages specifically defined by the court, so that the jury would have an accurate guide to conduct them to a proper award. But the defendant should have requested a more specific charge, if it conceived that the jury would be misled by the general language of the charge. It is the settled practice in this State that a party cannot avail himself of an omission which he made no effort to have supplied in the trial court. Our practice is in accord with the following statement from the text of Judge Thompson's work on Charging the Jury, § 82: 'If the charge is not a clear mis-

direction—if there is a *mere tendency* in it to mislead the jury, the defendant must ask additional explanatory instructions, in order to avail himself of its defectiveness in a court of error; but where it *necessarily* * * * misleads the jury, it is a fatal error. Nor will a judgment be reversed, because the charge is so general in its terms as to leave it doubtful whether the jury understood its application to the evidence. Here, as in the preceding case, the remedy of the party is to ask additional instructions before the jury retire. So where the judge has laid down a proposition, which, in the abstract is clearly right, but there is something peculiar in the situation of the parties, or their relations to each other, which would require a modification of it, and which had escaped the attention of the judge, it is the duty of counsel to call his attention thereto'.'' See also, *Hines* v. *Rice,* 142 Ark. 170, 218 S. W. 851; *Kirchman* v. *Tuffli Bros. P. I. & C. Co.,* 92 Ark. 117, 122 S. W. 239; *Western Coal & Mining Co.* v. *Buchanan,* 82 Ark. 503, 102 S. W. 694; *St. L. I. M. & S. Ry. Co.* v. *Jackson,* 78 Ark. 105, 8 S. W. 746; *Fox* v. *Spears,* 78 Ark. 76, 93 S. W. 560; *McGee* v. *Smitherman,* 69 Ark. 637, 65 S. W. 461; *White* v. *McCracken,* 60 Ark. 619, 31 S. W. 882.

Upon a consideration of the whole case, we find no reversible error in the record, and the judgment must be affirmed. It is so ordered.

HART, C. J., and McHANEY, J., dissent.