MILLER *v.* BLANTON.

4-8470                                                    210 S. W. 2d 293

Opinion delivered April 12, 1948.

*Hill, Fitzhugh & Brizzolara,* for appellant.

*J. F. Quillin* and *Hal L. Norwood,* for appellee.

ROBINS, J. As a result of a collision between an automobile owned and driven by appellee, M. W. Blanton, and an automobile being operated by appellant, Lloyd Miller, on a mission for his employer, the appellant, Columbia Pictures Corporation, said appellee and his wife, the appellee, Dorothy Blanton, sustained bodily injuries; and it was stipulated that the automobile of the first named appellee was damaged in the sum of $500.

In separate actions (consolidated for trial) brought by appellees against appellants, verdicts were returned in favor of appellees as follows: Appellee, Dorothy Blanton, compensatory damages, $1,000, punitive damages, $500; appellee, M. W. Blanton, compensatory damages, $500, punitive damages, $500. From judgment conforming to verdicts this appeal is prosecuted.

Only these two contentions are argued by appellants:

I. That there is no legal basis for the assessment of punitive damages herein.

II. That the amount of the compensatory damages awarded to appellee, Dorothy Blanton, is excessive.

## I.

The collision occurred on Highway 88, a graveled state highway, about three miles east of Mena. At this

point there is what is described by witnesses as a "blind hill," on which drivers of vehicles approaching the crest from opposite sides cannot see the approaching vehicle until just before they meet.

Appellant, Miller, was driving toward the east and appellees were traveling west, as they neared each other on the hill.

The car of appellee Blanton was well on his right hand side of the road, and as he saw the automobile of appellant Miller coming toward him over the hill, traveling on Blanton's half—Miller's left-hand side of the highway—said appellee made an unsuccessful effort to avoid the collision by driving his automobile farther to the right.

When persons living near by reached the scene the abnormal condition of appellant Miller was apparent. One of these testified that Miller's breath smelled of liquor, and that his tongue seemed to be thick. Another witness noticed the liquor on his breath and said that he staggered when he tried to walk. This witness expressed the opinion that Miller was drunk. Uncertainty about his condition was removed by the testimony of Miller himself. He testified that during a few hours before he left Mena he had consumed "four or five highballs" and that he was "half drunk." He admitted that he was on the wrong side of the road when his car struck appellee's automobile, and could give no reason whatever for driving over this hill on his left-hand side of the highway.

In the absence of proof of malice or willfulness, before punitive damages may be awarded, it must be shown that there was on the part of the tortfeasor a "wanton disregard of the rights and safety of others." *Texarkana Gas & Electric Light Company* v. *Orr,* 59 Ark. 215, 27 S. W. 66, 43 Am. St. Rep. 30.

Was there in the instant case substantial testimony to justify the finding of the jury that appellant, Miller, was guilty of this "wanton disregard of the rights and safety of others"?

The evidence showed that Miller, after drinking intoxicating liquor to the extent that his talk and his walk were noticeably affected, and to the extent that, according to his own statement, he was "half drunk," entered his car and sought to drive it over an improved state highway. In doing this he violated the criminal laws of this state (§ 6707, Pope's Digest).

When Miller imbibed alcoholic liquor he knew that he was taking into his stomach a substance that would stupefy his senses, retard his muscular and nervous reaction, and impair, if not destroy, the perfect coordination of eye, brain and muscles that is essential to safe driving. After Miller voluntarily rendered himself unfit to operate a car properly he undertook to drive his automobile, a potentially lethal machine, down a well traveled highway. His conduct in doing this was distinctly anti-social, and the jury was amply authorized in saying by their verdict that he was exhibiting a "wanton disregard of the rights and safety of others."

Appellants strongly rely on the opinion in the case of *Strauss* v. *Buckley,* 20 Cal. App. 2d 7, 65 Pac. 2d 1352, in which the California District Court of Appeals reversed, as excessive, a judgment for injuries growing out of an automobile collision. The court stated that the large amount of the verdict might be accounted for only on the theory that frequent reference to the drunken condition of the defendant had aroused the passion and prejudice of the jury. It does not appear that punitive damages were sought in that case, but the court did express the view that such damages were not recoverable because of the drunken condition of the driver, basing this declaration on the theory that the drunkenness was "an offense in itself for which punishment may be imposed in the ordinary course of law." The fallacy of this reasoning is apparent. Under this theory punitive damages might not be recovered for a felonious assault, no matter how cruel or malicious or wanton, because a punishment for the act was provided by the criminal statutes.

The majority rule in this country is at variance with the reasoning upon which the California court, in the *Strauss* case, based its opinion. The general rule is that the fact that the act complained of is a violation of the criminal laws will not bar recovery of punitive damages by the injured party. 25 C. J. S. 719. "According to the weight of authority, however, recovery of exemplary or punitive damages will not be denied merely because the wrongful act upon which the action is based may be or has been punished criminally." 15 Am. Jur. 711.

The Supreme Court of California, in the case of *Bundy* v. *Maginess*, 76 Cal. 532, 18 Pac. 668, held (Headnote 2): "In an action for assault and battery, the fact that defendant had previously been punished, criminally, for the assault is not a bar to the recovery of exemplary damages for the same offense."

We think this language of the Supreme Court of Arizona, in sustaining (in the case of *Ross* v. *Clark*, 35 Ariz. 60, 274 Pac 639) recovery of punitive damages against a drunken driver, whose car had collided with that of the injured parties, appropriate here: "As to the punitive damages, we do not think them too large, nor do we think them unjustified by the facts. . . . The evidence as to the defendant's condition at the time is in dispute. . . . The jury must have believed that he was intoxicated. The evidence tends to show he was driving at a reckless speed, with little control of his car. The traffic at the place and time was heavy, and for safety of himself and others demanded careful driving. It is made a criminal offense for a person to drive an automobile on the public highways of this state while in an intoxicated condition. The jury fixed the defendant's penalty pretty high, but we think the example and warning to drunken or intoxicated operators of automobiles just and wholesome and that it should not be disturbed by us."

Appellant Miller testified that a charge of "reckless driving" was filed against him as a result of this collision and that he pleaded guilty to this charge. The offense of "reckless driving" is thus defined by § 6708,

Pope's Digest: "Any person who drives any vehicle in such a manner as to indicate either a willful or a wanton disregard for the safety of persons or property is guilty of reckless driving." This testimony as to appellant's plea of guilty was competent as showing a deliberate declaration against interest by said appellant. 20 Am. Jur. 545. It therefore appears that the said appellant formally admitted that on the occasion of appellees' injury he was guilty of the very conduct that, under the rule laid down in all the decisions, authorizes the imposition of punitive damages.

It is argued by appellant, Columbia Pictures Corporation, that punitive damages against it were not recoverable because there was no proof that it participated in, authorized, or ratified, Miller's wrongful conduct.

There are jurisdictions in which it is held that exemplary damages may not be recovered against the employer for a tort of the employee in the absence of proof that the employer participated in, authorized, or ratified, the wrongful act.

But in most jurisdictions, "exemplary or punitive damages may be recovered from an employer for acts or omissions of his employee done or omitted to be done in the scope and course of his employment whenever the employee's acts are of such character as to form the basis for an allowance of exemplary damages, even though these acts were done without the employee's [employer's] knowledge or authorization and were not subsequently ratified by him, regardless of whether he did or did not know the servant to be incompetent or disqualified for the service in which he was engaged." 15 Am. Jur. 732. Arkansas is shown in annotation to this text as being one of the states in which this rule is in force, our decisions in the case of *St. L. I. M. & S. R. Co.* v. *Wilson,* 70 Ark. 136, 66 S. W. 661, 91 Am. St. Rep. 74, and in the case of *Texarkana Gas & E. L. Co.* v. *Orr,* 59 Ark. 215, 27 S. W. 66, 43 Am. St. Rep. 30, being cited. In the last cited case this question was not specifically discussed but the court upheld a verdict against a corporation for punitive damages in favor of

the estate of one who had been killed by a "live" electric power wire which had been permitted by the employees of the power company to remain lying across a street for several hours. In the other case the court said: "The jury may have found that appellant [railroad company] was liable for compensatory damages . . . but it did not follow that because they so found they should find punitive damages on said ground, unless they should further find that the tort or wrong of the servant in the particular alleged was in the line of his employment, and was willful, wanton, or malicious."

In the case of *Little Rock Ry. & Electric Co.* v. *Dobbins,* 78 Ark. 553, 95 S. W. 788, a street railway company sued by a passenger for damages arising from a forcible expulsion from a street car by the conductor asked the following instructions: "A street railway company is not liable in exemplary damages for the wrongful act of its employees in ejecting a passenger from its car, in the absence of proof of want of care in the selection of such employees and of authority given [by] it for the commission of the act, or ratification thereof after its commission." This court held that the refusal of the lower court to give this instruction was not error, the court's opinion being epitomized in headnote 1 thus: "A corporation, as distinguished from an individual, is liable in punitive damages for the malicious acts of its agents, done within the scope of their employment, although such acts were not ratified by it." While the language of the opinion referred only to corporations engaged as public carriers, the opinion was rested largely on this declaration of law by the Supreme Court of Mississippi in the case of *Pullman Palace Car Co.* v. *Lawrence,* 74 Miss. 782, 22 So. 53: "It is argued that vindictive damages are in their nature penal, and that no one should be liable to punishment unless the act complained of is his own act, made so by his authorization or ratification of it when committed by the servant, and that it is illogical for the courts to do anything punitive in character unless the master is directly and personally responsible for the very act complained of. The sufficient answer to this contention is that the judge-made law of punitive damages

is not the result of logic, but of public necessity, as text writers and courts have repeatedly shown. If corporations—artificial beings who can act only through agents and servants in their varied and multitudinous and constantly recurring business dealings with the public—can never be held liable in punitive damages for the acts of their servants unless expressly ratified by them, no matter how gross and outrageous the wrongful act of the servant, we feel perfectly safe in declaring that no recovery for more than mere compensatory damages will ever again be awarded against corporations. Corporations never expressly authorize their servants to beat or insult or outrage those having business relations with them, and they rarely ratify such conduct. Having by the constitution of their being to act solely by agents or servants, they must, as matter of sound public policy, be held liable for all the acts of their agents and servants who commit wrongs while performing the master's business and in the scope of their employment, and this to the extent of liability for punitive damages in proper cases.'' In the case of *Little Rock Ry. & Electric Co.* v. *Dobbins, supra,* we said, as to this statement of the law by the Mississippi court: ''This doctrine, although apparently in conflict with the decision of the Supreme Court of the United States, is supported by the majority of the States that have announced a rule upon the subject, and is in accord with our own views, as announced in several cases . . .''

In the case of *Pine Bluff & Arkansas River Railway Company* v. *Washington,* 116 Ark. 179, 172 S. W. 872, Judge HART, speaking for the court, said: ''This court has adopted what is usually called the rule of general liability, which has been defined as follows: 'A corporation may be held liable to exemplary or punitive damages for such acts done by its agents or servants acting within the scope of their employment as would if done by an individual acting for himself, render him liable for such damages. See case note to 48 L. R. A., N. S. p. 38.' ''

The lower court did not err in submitting to the jury the question of the liability for punitive damages of the corporate defendant.

## II.

The testimony showed that appellee, Dorothy Blanton, was about five months advanced in pregnancy when she was injured; that she was rendered unconscious and had to be carried to a hospital; that the collision caused her to suffer with pains in her back, leg and hips, and from shortness of breath. We cannot say, as a matter of law, that the jury's allowance of $1,000 for her physical injury and pain and suffering was excessive.

The judgment is affirmed.

SMITH, J., dissenting. The testimony shows that appellant Miller was driving across the center line of the road when the collision occurred. This was in violation of the traffic laws, and sustains the finding of negligence and this is true whether Miller was drunk or sober. According to the undisputed testimony, Miller had been drinking, and he entered a plea of guilty to the charge of driving recklessly. But nothing more was shown. Miller was negligent, grossly so, when he drove his car while in an intoxicated condition. But the testimony shows nothing more. There is an entire absence of testimony showing willfulness or wantonness on his part.

The hill where the collision occurred is referred to as a blind hill. Neither of the cars, coming in opposite directions, could see the other until the crest of the hill had been reached, and the cars were within forty feet of each other before the driver of either car could see the other. Both cars were driving at a speed of about thirty-five miles per hour. The testimony as to the tracks of the respective cars shows that each, after discovering the presence of the other, attempted to avoid the collision. No one saw the collision except the occupants of the two cars, as there was no other traffic on the road at the time, coming from either direction. Because Miller was intoxicated the jury assessed punitive damages against

him in favor of each of the plaintiffs, in the sum of $500. There was no other reason for doing so.

Cases on the subject as to when and under what circumstances punitive damages may be assessed are almost without number, and there are many of our own cases on the subject. I shall not review these cases, but will refer only to those which may be regarded as the leading cases which have been cited most often.

The first of these is the case of *Kelly* v. *McDonald*, 39 Ark. 387, in which case Chief Justice ENGLISH said: "Exemplary damages ought not to be given, unless in case of intentional violation of another's right, or when a proper act is done with an excess of force or violence, or with malicious intent to injury another in his person or property."

On the authority of this McDonald case, Justice SANDELS said in the case of *St. Louis, I. M. & S. Railway Co.* v. *Hall,* 53 Ark. 7, 13 S. W. 138: "The element of willfulness or conscious indifference to consequences, from which malice may be inferred, is lacking. The engineer of defendant appears to have occasioned the injury while in the performance of his duty. He is not shown to have acted otherwise than with a careless unconsciousness of plaintiff's possible danger." The judgment for punitive damages in that case was reversed for the reason just stated. Both of these cases have been frequently cited and followed, and in none of them has the law as declared in those opinions been questioned.

Another leading case on the subject is *St. Louis, I. M. & S. Ry. Co.* v. *Dysart,* 89 Ark. 261, 116 S. W. 224. There a collision occurred between an Iron Mountain train and a train of the Frisco Railroad Co. at a surface crossing of the railroads in the town of Nettleton. Negligence more gross could hardly exist in any case. The opinion recites that the Iron Mountain train in violation of the operating rules of that company, ran upon the crossing without stopping, striking the Frisco train. Damages both compensatory and punitive were awarded. The judgment for compensatory damages was affirmed; the

judgment for punitive damages was reversed and dismissed. It was there said: "There is much contrariety of opinion among the authorities as to what is essential in order to justify an infliction of punitive or exemplary damages. But this court is firmly committed to the doctrine that negligence alone, however, gross, is not sufficient, and that there must be an added element of intentional wrong, or, what is its equivalent, conscious indifference in the face of discovered peril, from which malice may be inferred." (Citing cases) it was there further said: "The terms 'wilfulness, or conscious indifference to consequences from which malice may be inferred,' as used in the decisions of this court, means such conduct in the face of discovered peril. In other words, in order to superadd this element of damages by way of punishment, it must appear that the negligent party knew, or had reason to believe, that his act of negligence was about to inflict injury, and that he continued in his course with a conscious indifference to the consequences, from which malice will be inferred." Here the undisputed evidence is that as soon as Miller became aware that his negligence had imperiled the safety of another, he did everything in his power to avert the consequences.

A judgment for punitive damages was affirmed in the case of *St. Louis, I. M. & S. Ry. Co.* v. *Stamps,* 84 Ark. 241, 104 S. W. 1114. Justice RIDDICK wrote a dissenting opinion which is referred to in the opinion on rehearing as the opinion of the late Mr. Justice RIDDICK. This dissenting opinion is probably the last opinion written by Judge RIDDICK. In his dissenting opinion Justice RIDDICK said: "Negligence, I admit, is shown, but to my mind the circumstances all rebut the idea that the injury was wilfully inflicted, or that there was anything wanton or wilful in the conduct of the engineer. For that reason I am convinced that exemplary damages ought not to be allowed. In the opinion on rehearing, a difference of opinion existed as to the established facts, and the opinion states "If the majority could see the facts that way, there would be no escaping the conclusion stated in the opinion of Mr. Justice RIDDICK." So that the entire court

approved the statement of law in Justice RIDDICK's dissenting opinion above quoted.

We do not find in any of our own cases any holding contrary to Justice RIDDICK's statement of the law, on the contrary, in the Chapter on Damages, West's Digest of the Arkansas Reports, Sec. 91, numerous cases are cited in support of the statement there appearing that "negligence, however gross, will not justify a verdict for exemplary damages unless the negligent party is guilty of willfulness, wantonness or conscious indifference to consequences from which malice may be inferred." No case to the contrary is cited.

The case of *Texarkana Gas & Electric Co.* v. *Orr,* 59 Ark. 215, 27 S. W. 66, is cited in support of the judgment here appealed from. In that case a judgment for punitive damages was sustained. A headnote reads: "Evidence that an electric light company knew in the night time that its wires were badly grounded, that its superintendent gave orders that the power should nevertheless be kept up, that after daylight, about 6 a. m., when many people were on the street, a live wire still lay on a street crossing by coming in contact with which a passerby was killed, is such evidence of wanton disregard of the rights and safety of others as will justify an assessment of punitive as well as actual damages."

In that case there was knowledge of possible peril to pedestrians on the street, and a conscious indifference to this peril. In our consultation the case of *Ross* v. *Clark,* 35 Ariz. 60, 274 Pac. 639 was before us. The Supreme Court of Arizona there affirmed a judgment for punitive damages against the drunken driver of a taxicab. But the opinion recites the following facts. "The evidence tends to show he was driving at a reckless speed, with little control of his car. The traffic at the place and time was heavy, and for safety to himself and others demanded careful driving." It thus appears that there existed in that case a conscious indifference to the injury and damage the drunken driver would probably inflict. These facts are absent here. Miller was not driving

recklessly, and there was no traffic except that of the two cars which collided.

In our recent case of *Benson* v. *State,* 212 Ark. 905, 208 S. W. 2d 767, we affirmed a penitentiary sentence of eighteen months against the defendant who killed a person while recklessly and illegally operating a truck under the influence of intoxicating liquors, under Act 169 of the Acts of 1947. It was there pointed out that under § 6707, Pope's Digest, as amended by Act 194 of the Acts of 1943, it is made unlawful for any person to drive a vehicle while under the influence of intoxicating liquors. The majority opinion supplements this Act of 1943 by imposing punitive damages for which the statute does not provide. In other words, the punishment imposed by law is insufficient, and the majority have added to it a civil liability. The General Assembly did not impose this liability, but the majority have done so of their own accord, and this has been done contrary to an unbroken line of our decisions on the subject of liability for punitive damages.

For the violation of Act 194 of the Acts of 1943, amending § 6707, Pope's Digest, Miller became liable, under that Act, to imprisonment for not less than ten days, nor more than one year in jail, or to a fine of not less than $25 or more than $1,000, or both such fine and imprisonment. The presumption is conclusive that Miller, under his plea of guilty, was given what was thought to be an appropriate punishment for his violation of the statute, which the opinion in the case of *Benson* v. *State, supra,* says was passed to prevent accidents and for "the preservation of persons from injury on the highways." Miller testified that he entered a plea of guilty because the sheriff told him that the tracks of his car showed that he had driven to the left of the center line of the highway.

By § 6708, Pope's Digest, it is provided that "Any person who drives any vehicle in such a manner as to indicate á wilful or wanton disregard for the safety of persons or property is guilty of reckless driving" and is subject to the penalty there provided. This Act applies

to the person who either willfully or wantonly disregards the safety of others. These terms "willfully and wantonly" are defined in the opinion in the Dysart case, *supra,* to mean, "such conduct in face of discovered peril. . . . and that it must appear that the negligent party knew, or had reason to believe, that his act of negligence was about to inflict injury, and that he continued in his course with a conscious indifference to the consequences, from which malice will be inferred."

No prudent man would drive a car while drunk, but the lack or absence of prudence is mere negligence and negligence, however gross, does not justify the imposition of punitive damages.

The person driving a vehicle in violation of the law is subject to the punishment prescribed by law, whether he injures anyone or not. To constitute a violation of the law the statute does not require or provide that he shall have injured another person. It is a penal statute, highly so, but does not provide for the imposition of punitive damages for its violation. The majority have supplied this omission.

Of course one who injures another willfully or wantonly is not exempt from liability for punitive damages because in inflicting the damage he committed a crime. One might become liable for punitive damages without committing a crime. The test for imposing punitive damages is not merely whether one has violated the law, but is rather whether he acted willfully or wantonly in his wrong-doing, as these terms have been defined by this court. If while acting willfully or wantonly one injures another, he is liable for punitive damages, but the liability for punitive damages arises not from the fact alone that the law was violated, but from the added fact that he had acted willfully or wantonly.

Here there is an entire absence of any showing that Miller acted willfully or wantonly, or with conscious disregard of the safety of any other person. He was perceptibly under the influence of liquor, and was properly held liable for the consequence of his negligent driving

in that condition, but unless the mere fact of being drunk supplies the absence of willfulness or wantonness, and renders such proof unnecessary, punitive damages should not be awarded.

There appears, therefore, no reason for the imposition of punitive damages in this case, except the fact alone that Miller was under the influence of intoxicating liquors. Certainly this is a proper circumstance to consider in determining whether he is liable for the injury inflicted, but compensatory damages only may be awarded where there is absent, as in this case, any element of willfulness or wantonness, or a conscious indifference to the consequences of one's conduct.

The Court of Appeals of California in the case of *Strauss* v. *Buckley*, 20 Cal. App. 2d 7, 65 Pac. Rep. 2d 1352, announced what I think is the law conforming to our own decisions. There a judgment for punitive damages was awarded against the drunken driver of an automobile. In reversing that judgment it was said: "The damages recoverable in a case of this kind are to be compensatory only; punitive damages are not recoverable because of the drunkenness of the defendant. That is an offense in itself for which punishment may be imposed in the ordinary course of law. Evidence of the drunkenness may be offered, of course, to show the negligence of the driver, but it may not be used to enhance the award of damages beyond that which will fairly compensate the plaintiff for the injuries suffered."

The majority have departed from the requirements heretofore existing for the imposition of punitive damages, and the new rule must eventuate in one or two things: First, insurance carriers in future policies must expressly exempt themselves from liability for punitive damages, or, Second, they must charge increased rates for insurance to compensate their increased and added liability.

In my opinion the judgment for compensatory damages should be affirmed and the judgment for punitive damages should be reversed and dismissed. I am au-

thorized to say that Justice McHaney and Justice Mc-Faddin concur in the views here expressed.