VOGLER *v.* O'NEAL.

5-1078 295 S. W. 2d 629

Opinion delivered November 26, 1956.

*Barber, Henry & Thurman,* for appellant.

*Talley & Owen* and *Dale Price,* for appellee.

J. SEABORN HOLT, Associate Justice. Appellee, Earl O'Neal, brought this action against Ted Vogler, appellant, to recover compensatory and also punitive damages alleged to have resulted from the collision of an automobile driven by Vogler and one driven by O'Neal, on March 4, 1955. Specific acts of negligence on the part of Vogler were alleged in the complaint and in addition it was alleged that such acts were willful, wanton and malicious and entitled O'Neal also to punitive or exemplary damages. Appellee sought $50,000 as compensatory damages and $10,000 as punitive damages.

At the trial appellant (Vogler) admitted liability for compensatory damages and denied any liability for punitive damages. The jury returned a verdict for O'Neal for $10,739.45 compensatory damages and $12,-000 as punitive damages. Thereafter the court, on its own motion, reduced the $12,000 verdict to $10,000 to conform to the prayer of appellee's complaint and judgment was rendered accordingly. This appeal followed.

Appellant for reversal relied upon the following points: "I. The lower court erred in giving plaintiff's instructions Numbered 1 and 3. II. The lower court erred in permitting witnesses Brown, Laird and Single-

ton to testify as to statements made to them by Vogler, and as to Vogler's physical condition hours subsequent to the time of the accident. III. The verdict as to compensatory damages is excessive and the result of passion and prejudice. IV. The verdict as to punitive damages is excessive and was the result of passion and prejudice.''

We consider them in the order presented.

# I

Instruction No. 1 provided: ''You are instructed that the parties, both the plaintiff and the defendant, have agreed that Earl O'Neal is entitled to recover actual damages suffered by him from the defendant, Ted Vogler. You will find for Earl O'Neal in such sum as you find from a preponderance of the evidence, will reasonably compensate him for the injuries he sustained, if any; the pain and suffering he has suffered to date, if any, the pain and suffering he will suffer in the future, if any, the medical expenses he has incurred to date, if any, the medical expenses he will incur in the future, if any; permanent partial disability which he has suffered, if any. Upon these elements of damages, you will fix such sum as in your judgment you find from a preponderance of the evidence will reasonably compensate him for the injuries and damages he sustained, if any.''

Appellant objected specifically, at the trial, to that part of the above instruction ''which submits to the jury the recovery by plaintiff of future medical expense and future pain and suffering, if any,'' and he argues here that the instruction was ''inherently erroneous in that it permitted the jury to assess damages for permanent disability and injury when there was no testimony in the record, nor was there any prayer in the complaint which would have justified this element of damages.'' The record reflects that there was a prayer for permanent disability and injury in the complaint. The complaint states: ''Thereby causing serious, grievous, painful and permanent injuries to the plaintiff.'' We do not agree that this instruction was inherently erroneous and hold that it was a correct statement of the law with regard

to the measure of damages. We said in *Coca-Cola Bottling Co. of Arkansas* v. *Adcox,* 189 Ark. 610, 74 S. W. 2d 771 that: ''The measure of damages for a physical injury to the person may be broadly stated to be such sum, so far as it is susceptible of estimate in money, as will compensate plaintiff for all losses, subject to the limitations imposed by the doctrines of natural and proximate consequences, and of certainty, which he has sustained by reason of the injury, including compensation for his pain and suffering, for his loss of time, for medical attendance, and support during the period of his disablement, and for such permanent injury and continuing disability as he has sustained. Plaintiff is not limited in his recovery to specific pecuniary losses as to which there is direct proof, and it is obvious that certain of the results of a personal injury are unsusceptible of pecuniary admeasurement, from which it follows that in this class of cases the amount of the award rests largely within the discretion of the jury, the exercise of which must be governed by the circumstances and be based on the evidence adduced, the controlling principle being that of securing to plaintiff a reasonable compensation for the injury which he has sustained.'' After a review of all the evidence, we hold that there was some substantial evidence that appellee has suffered permanent partial disability and will continue in the future to suffer pain and would incur future medical expenses. There was medical testimony supporting this view. Dr. Jones testified that when he reexamined O'Neal on March 28, 1956 he was complaining of injury to his left leg: ''Q. And what does this injury to the left leg consist of? A. . . . At that time he was complaining of pain just above the outer aspect of the left knee . . . Q. You found it to be constant? A. Yes, sir. Q. Did you find any disability as a result of this knee? A. The disability would be the result of pain and complaint of pain he had. Mechanically there is no disability. From the standpoint of discomfort he experienced, yes. There was some degree of disability . . . Q. Would you estimate the disability? A. Five per cent as related to the leg or that would be the

reasonable estimation." Dr. Hundley testified that he treated O'Neal beginning March 27, 1955, that he had a fracture of the 3rd, 4th, 5th and 6th, 9th, 10th and 11th ribs, a fracture of the left scapula, or shoulder blade, that he was suffering great pain. Quoting from appellant's brief, Dr. Hundley testified: ". . . that his examination revealed some tenderness of the left paracervical area with extension of the cervical spine or neck being 75% normal, flexion 75% of normal; that side bending to the left was 50% of normal, to the right 75% of normal; that side bending of the cervical spine was accompanied by pain in the left side of the neck and left collar bone area; that rotation to the left was 50% of normal, to the right normal; . . . that flexion of the trunk was normal but bending backward was 75% of normal accompanied by pain in the chest . . . He again examined Mr. O'Neal on May 21, July 11, October 8, 1955, and on March 27, 1956, giving him medication for relief of pain as well as physical therapy. The last date he saw him was March 27, 1956. At that time he stated there had been no locking in the fingers, but he had had pain in his left ring finger and left thumb and the entire left arm was sore. He stated he had dizzy spells and was extremely nervous and had had headaches since returning to work. He also complained of a pulling sensation in his left leg . . . July 11, 1955, he returned to the office, stating that the left knee felt like something was cutting it and he could hardly walk at times . . . He continued to complain of neck and back pain and headaches . . . On October 8, 1955, examination revealed muscle spasm to the lower spine and tenderness . . . He returned to the office on March 27, 1956, stating that sometimes when he sits down, he can hardly get up because of pain in his low back . . . The physical examination revealed tenderness in the lumbar areas . . . As of March 27 he still found tenderness in the lumbosacral area. Flexion was normal but the extension or backward bending was limited about 50% of what it should be. As of the date of his last examination he continued to complain of pain . . . The last date he saw him was March 27, 1956.

Under our well established rule we must affirm when we find any substantial evidence to support the jury's verdict and in determining whether the evidence is substantial we must give it the strongest probative force that it will bear, in favor of appellee here. As indicated, we hold that it was sufficient on the evidence presented.

Appellant next complains that plaintiff's Instruction No. 3, to which he made only a general objection, is erroneous. That instruction was as follows: "If you find from a preponderance of this evidence that the defendant's negligent acts, if any, were committed wantonly or willfully, then you are told, if you find for the plaintiff in compensatory damages, you would then be justified to assess punitive damages in such amount as you may deem sufficient under the evidence, if any; to punish him for his misconduct, if any; and to serve as a proper warning to others." Appellant says "that this instruction was erroneous, in that it did not limit the amount of the recovery for punitive damages." Appellant, as indicated according to the record, was content to make a general objection only to this instruction, which cannot be sustained unless the instruction was inherently wrong, and we hold that it was not inherently erroneous. The record reflects that just before the instructions were given by the court, appellant's only reference to an instruction on punitive damages was in this language: "We feel the issues should be confined (1) to the measure of damage and, (2) as to whether or not there is sufficient evidence to justify an award of punitive damages in addition to the compensatory damages." As indicated, appellant made no specific objection to this instruction. No other instruction on the measure of damages was requested. In the circumstances the rule announced by this court in *Kirchoff* v. *Wilcox*, 183 Ark. 460, 36 S. W. 2d 667, is applicable. We there said: "An instruction was given on the court's own motion which reads as follows: 'If you find for the plaintiff your verdict should be: "We, the jury, find for the plaintiff," and assess whatever damages you think he is entitled to under the proof.' No other instructions on the

measure of damages was asked or given, and only a general objection was made to the instruction as given
. . . The instruction does not contain any erroneous declaration of law and does not announce an improper rule by which to measure the damages. Its defect is that it does not furnish a correct guide to the jury as to the measure of damages, etc. . . . Here our attention is called to the fact that no specific objection was made to the instruction in the court below, and such is the state of the record . . . It is the settled practice in this State that a party cannot avail himself of an omission which he made no effort to have supplied in the trial court . . . Here, as in the preceding case, the remedy of the party is to ask additional instructions before the jury retires. So where the judge has laid down a proposition, which, in the abstract is clearly right, but there is something peculiar in the situation of the parties, or their relations to each other, which would require a modification of it, and which had escaped the attention of the judge, it is the duty of counsel to call his attention thereto.''

## II

We hold that no error was committed by the trial court in permitting witnesses Brown, Laird and Singleton to testify as to certain statements made to them by Vogler (defendant) — many hours after the mishap — as to Vogler's physical condition at the time the collision occurred. Witness Allison Brown was permitted to testify on behalf of appellee, that on the morning following the collision he was at appellant's home and appellant told him he did not remember any of the details of the mishap because he was intoxicated. Two other witnesses, Officers Singleton and Laird, over appellant's objection, were permitted to testify not only that appellant was intoxicated when they arrived at the scene of the collision but both witnesses were permitted to detail to the court appellant's condition after he had been confined in the Little Rock Municipal Jail and as to statements by the defendant made to them at that time. Officer Singleton further testified that appellant, Vogler, told

him that as he was leaving Walnut Ridge on his way to Little Rock he purchased two half-pints of whiskey and that he consumed these two half-pints. The testimony of these two witnesses was clearly admissible, we hold, since the statements were made to them by the defendant and, in effect, were against his own interest. "The acts and declarations of a party to a suit, when they afford any presumption against him may be proven by the opposing party. It is a well recognized rule of evidence that any statements which may have been made by a party to a suit against his interest, touching material facts, are competent as original testimony," *Collins* v. *Mack*, 31 Ark. 684. Also see *Covington* v. *Little Fay Oil Co.*, 178 Ark. 1046, 13 S. W. 2d 306.

## III

We have concluded that the verdict for $10,739.45 — as compensatory damages — was not excessive in the circumstance. The evidence shows that appellee was in the hospital for 4 days, and was confined to his home over 2 months and had to sleep in a chair 31 nights. His doctor's bills amounted to $634.50, hospital $101.95 and ambulance $10 — a total of $746.45. He suffered great pain and will continue to suffer some pain and partial permanent disability. We cannot say that the jury's allowance of $10,739.45 as compensatory damages, while liberal, is excessive.

## IV

We hold, however, that $10,000 allowed by the jury for exemplary damages was excessive and that this amount should be reduced to $5,000. From the testimony presented, the jury had this situation before it: Vogler bought two half-pints of whiskey in Walnut Ridge, drank them before he got to Little Rock, was traveling 60 miles per hour across the Main Street Bridge from North Little Rock to Little Rock; drove his car from the extreme west of the bridge across to the extreme east of the bridge and struck appellee; was so drunk he didn't recall any of the details of the accident; was so indifferent to O'Neal's injuries that he didn't

bother to see Mr. O'Neal after the accident until the day of the trial. In these circumstances, the jury was warranted in assessing in effect, Vogler's conduct as willful, and that he was exhibiting a wanton disregard for other people's rights.

In approving punitive damages, in a similar situation to that here presented, we announced the following principal of law in *Miller* v. *Blanton,* 213 Ark. 246, 210 S. W. 2d 293, 3 A. L. R. 2d 203, in which is cited with approval, the case of *Ross* v. *Clark,* 35 Ariz. 60, 274 P. 639, wherein the court said: " 'Punitive damages' are not intended to remunerate the injured party for the damages he may have sustained. They are not to compensate; they are the penalty the law inflicts for gross, wanton, and culpable negligence, and are allowed as a warning or as an example to defendants and others. Because they are an example as to what the law will do for such conduct when it results in injury to the person or property of others, they are sometimes called exemplary damages." "There is no fixed standard for the measurement of exemplary or punitive damages; the amount of the award is largely within the discretion of the jury or of the Court sitting without a jury, on the consideration of the attendant circumstance." 20 C. J. S. 126.

We can well understand that the jury here was justifiably outraged at the reckless and wanton conduct of this drunken appellant, and that it felt warranted in fixing his penalty high, as a warning to intoxicated operators of automobiles, however we have concluded, as indicated, that such penalty should not be greater than $5,000.

Accordingly the judgment for $10,739.45 compensatory damages is affirmed. The judgment for $10,000 punitive damages will be reduced to $5,000 and affirmed for this amount ($5,000) provided appellee, shall within 15 days from the date of this opinion enter a remittitur

in the amount of $5,000 as indicated. Otherwise this judgment as to punitive damages will be reversed and remanded.

Justice MILLWEE not participating.