LESTER WILLIS *v.* RAY ELLEDGE

5-4186                                    413 S. W. 2d 636

Opinion delivered April 10, 1967

*Gannaway & Darrow,* for appellant.

*Martin, Dodds & Kidd;* By *Lowber Hendricks, Jr.,* for appellee.

CARLETON HARRIS, Chief Justice. An automobile driven by appellant, Lester Willis, struck the rear of an automobile operated by appellee, Ray Elledge, on West

Markham Street in Little Rock about 5:30 P.M. in December, 1965, the Elledge vehicle being stopped at the time, awaiting the clearance of westbound traffic. Elledge instituted suit against appellant for damages, alleging personal injuries, and contending that Willis was guilty of negligence, and further asserting that appellant was under the influence of alcoholic beverages, and had voluntarily rendered himself unfit to operate his automobile. The complaint sought the recovery of $25,-350.00 for compensatory damages, and also asked punitive damages in the amount of $5,000.00. On trial, the jury returned a verdict awarding compensatory damages in the sum of $2,500.00, and also awarded the additional sum of $5,000.00 as punitive damages. This appeal is taken from that portion of the judgment awarding punitive damages. Only one point is relied upon, *viz.*:

"The verdict awarding punitive damages to Appellee in the amount of $5,000.00 is not supported by the evidence and is excessive, evidencing passion and prejudice on the part of the jury."

Elledge and Officer W. H. Armstrong were the only persons to testify on behalf of appellee relative to appellant's alleged intoxication. Elledge's testimony on this point is as follows:

"Q. Now, getting back to the accident for a moment, Mr. Elledge, did you detect any odor of alcohol on the person of Mr. Willis?

A. Yes, sir, I did.

Q. Did you form any opinion as to the sobriety...

MR. GANNAWAY:

* * * your Honor, I don't believe that would be admissible.

THE COURT:

He can tell what he saw, physical facts, but

he can't give his opinion whether or not he was sober at the time.

MR. HENDRICKS:

Q. All right. Mr. Elledge, in addition to the odor of alcohol that you smelled, was there anything unusual in Mr. Willis' movements, conduct?

A. Yes sir he didn't talk very good.

Q. In what way?

A. Well he was kind of incoherent.

Q. Was his speech slurry?

A. And he leaned up against the car and staggered and his eyes were kind of, I don't know you could tell he was drunk."

Officer Armstrong gave the following testimony on that point:

"Q. Did you detect any odor of alcohol about the defendant, Lester Willis?

A. Yes, sir, I did.

Q. Did Mr. Willis make any statements to you, Officer, regarding drinking?

A. Yes, sir. When I first arrived I talked to Mr. Willis, along with Mr. Elledge, and he stated that he had one beer. At the scene of the accident he was staggering and incoherent and I told Mr. Willis it was to my opinion he had more than one beer and he said that he was out West Markham earlier in the afternoon and that he was having target practice with a 22 caliber rifle he had in the back of his car, and that he had been drinking about all afternoon.

Q. Did you form any opinion as to the sobriety of Mr. Willis?

A. Yes, sir, I kind of felt that he was drunk.''

Willis testified that he had been out ''target shooting'' during the afternoon with a friend, and that he had consumed one quart of beer from 1:30 P.M. through the balance of the afternoon. He denied that he was intoxicated in any degree, and said that he did not see appellee's car until revealed by his own lights.

''Well, I came over the hill, coming east, and I hadn't much more than got straightened out until my light hit this car up in front of me. That's all I saw, this bulk up in front of me and I immediately put on my brakes as hard as I could and it wasn't enough to stop me.''

He testified that he was operating his car well within the speed limit (40 miles per hour), and there is no evidence to the contrary. Willis, a carpenter and veteran of World War II (Seabees), apparently as a matter of minimizing the effect of the evidence about his ''staggering,'' stated:

''I am rated 10 per cent disabled, service-connected on my left shoulder due to a neuritis condition and 10 per cent on my feet.''

He testified that he wore ''built-up'' shoes to support his feet, and exhibited the shoes to the jury.

''By the end of the day, when I finish my work, by the time I put in eight hours walking around or working I am limping. It's painful to be on my feet. I will limp after I have been on my feet for around eight to nine hours.''

Appellant first argues that there was not enough evidence to submit the issue of punitive damages to the

jury, but we cannot consider this question, since an instruction on punitive damages was given the jury without objection on the part of appellant. The failure to object to an instruction operates as a waiver of any error that might be committed in giving it. *Evins* v. *St. Louis & S. F. Rd. Co.,* 104 Ark. 79, 147 S. W. 452.

It is next argued that the amount recovered was excessive. Four cases are cited by the parties on this point. In *Miller* v. *Blanton,* 213 Ark. 246, 210 S. W. 2d 293, the opinion reflects that the vehicle driven by appellant Miller was coming over a hill and traveling on Blanton's half of the highway. Further, from the opinion:

"When persons living nearby reached the scene the abnormal condition of appellant Miller was apparent. One of these testified that Miller's breath smelled of liquor, and that his tongue seemed to be thick. Another witness noticed the liquor on his breath and said that he staggered when he tried to walk. This witness expressed the opinion that Miller was drunk. Uncertainty about his condition was removed by the testimony of Miller himself. He testified that during a few hours before he left Mena he had consumed 'four or five highballs' and that he was 'half-drunk.' He admitted that he was on the wrong side of the road when his car struck appellee's automobile, and could give no reason whatever for driving over this hill on his left-hand side of the highway."

Miller also testified that he had pleaded guilty to a charge of reckless driving, the court pointing out that this offense is defined as, "Any person who drives any vehicle in such a manner as to indicate either a willful or a wanton disregard for the safety of persons or property." The jury had awarded punitive damages of $500.00 for Mr. Blanton. These judgments were affirmed. It will be at once noted that the testimony as to intoxication is vastly stronger than the evidence in the pres-

ent case, and that the amount awarded to both appellees only totaled $1,000.00.

In *Hall* v. *Young,* 218 Ark. 348, 236 S. W. 2d 431, an award of $100.00 punitive damages was given appellee. The court reviewed the testimony relating to punitive damages as follows:

"***Appellant and four other young men were returning to Marvell from a night club near Forrest City, Arkansas. Appellant and two of his companions had been drinking heavily since early in the afternoon and had stopped at Walnut Corner for the last drink shortly before the collision. It was raining and the highway was only 14 feet wide at the point of the collision. The shoulders of the road had been recently graded and were muddy.

"We will not attempt to detail the testimony. It is sufficient to say that the jury was warranted in concluding that the collision was the proximate result of appellant's gross and wanton negligence in operating his car on a rainy night over the narrow, slippery road at an excessive speed while intoxicated. Under our holding in the recent case of *Miller* v. *Blanton,* 213, Ark. 246, 210 S. W. 2d 293, 3 A. L. R. 2d 203, the evidence, when viewed in the light most favorable to appellee, was sufficient to sustain the verdict for both compensatory and punitive damages."

Again, the evidence of intoxication is considerably greater than in the present instance, and, as stated, the amount awarded was only $100.00. In *Vogler* v. *O'Neal,* 226 Ark. 1007, 295 S. W. 2d 629, the opinion reflects the evidence to be as follows:

"We hold, however, that $10,000 allowed by the jury for exemplary damages was excessive and that this amount should be reduced to $5,000. From the testimony

presented, the jury had this situation before it: Vogler bought two half-pints of whiskey in Walnut Ridge, drank them before he got to Little Rock, was traveling 60 miles per hour across the Main Street Bridge from North Little Rock to Little Rock; drove his car from the extreme west of the bridge across to the extreme east of the bridge and struck appellee; was so drunk he didn't recall any of the details of the accident; was so indifferent to O'Neal's injuries that he didn't bother to see Mr. O'Neal after the accident until the day of the trial. In these circumstances, the jury was warranted in assessing in effect, Vogler's conduct as willful, and that he was exhibiting a wanton disregard for other people's rights. * * *

   &#42; &#42; &#42;

"We can well understand that the jury here was justifiably outraged at the reckless and wanton conduct of this drunken appellant, and that it felt warranted in fixing his penalty high, as a warning to intoxicated operators of automobiles, however we have concluded, as indicated, that such penalty should not be greater than $5,000."

The final case cited is *Holmes* v. *Hollingsworth*, 234, Ark. 347, 352 S. W. 2d 96. Both appellant and appellee cite this case in support of their respective positions. There, Mrs. Hollingsworth was awarded $2,500.00 compensatory damages and $2,500.00 punitive damages; her child was awarded $1,500.00 compensatory damages and $2,500.00 punitive damages. On appeal, this court said:

"There was ample evidence to take the case to the jury on the question of punitive damages. It was shown that Mr. Holmes was intoxicated at the time he drove into the rear of the Hollingsworth car; that he got out of his car and went to the Hollingsworth car and insisted that there was nothing wrong with the baby, who at the time was unconscious and barely breathing; and it was shown that Holmes' conversation and locomotion were noticeably affected by the intoxicants."

We reduced the awards of punitive damages to $1,-250.00 for each appellee, or a total of $2,500.00.

The cases all point out that it is difficult to lay down a rule for testing the excessiveness of a verdict for punitive damages, but it is evident that in each of the four cases mentioned, there was more evidence of intoxication, and likewise, more evidence of hazardous driving than in the case before us. In other words, there was a much stronger showing of wrong-doing, so as to justify the awards of exemplary or punitive damages. Yet, in two of the four cases, the awards were reduced 50%, and the other two cases only involved awards of $500.00 and $100.00. Here, there is no evidence of violation of the speed limit, no evidence of driving on the wrong side of the street, and no evidence of a slick highway or other hazardous conditions. Nor is the testimony of the officer unequivocal as to appellant's condition. "Yes, sir, I *kind of* [our emphasis] felt that he was drunk." We have reached the conclusion that an award of $2,500.00 for punitive damages would be fair and reasonable.

If, therefore, within seventeen calendar days, the appellees will enter remittitur for punitive damages in excess of $2,500.00, the judgment will be affirmed. Otherwise, the judgment will be reversed and the cause remanded.

GEORGE ROSE SMITH, FOGLEMAN, and BYRD, JJ., dissent.

CONLEY BYRD, Justice, dissenting. I dissent from that portion of the majority opinion that reduces the jury's $5,000 punitive damage award to $2,500.

The evidence fails to show any indication of prejudice or passion on the part of the jury, particularly in the awarding of the compensatory damages in the amount of $2,500. Regarding the compensatory damages, the testimony shows that appellee had a pre-existing arthritis of his neck which was aggravated by the hyperextension flexion injury of his neck, and that he also had

a lumbosacral strain or a sprained back. The doctor testified that, although the accident happened on December 4, on December 21 the muscle spasm in appellee's neck could be seen completely across the room. Appellee lost work from December 4 to February 18, incurred doctor bills of $461.50, and has a continuing drug bill of $18 per month. The $2,500 compensatory judgment for these damages is most modest, and in fact appellant does not argue that it is excessive.

In addition to the facts set out in the majority opinion, the record shows that appellant did not see appellee's stopped car until he was within 60 feet of the rear thereof, even though he had an unobstructed view in excess of 150 feet before the point of impact. The facts surrounding appellant's activities on that day, together with his attitude which was observed by the jury, belie his "one-beer" story. It is true that he admits that he bought one quart of beer from a grocery store in the morning, which he says he drank from some time about 1:30 until around 5 o'clock. While so testifying about the one beer, he states that the reason for his having been out to do some target practicing was that he had built up a gun which he wanted to test. On cross examination, however, he admitted that he had split his thumb the day before he went out to test the gun, and because of the sore thumb he was unable to try out the gun.

Many other inconsistencies in appellant's story could be shown from the record, including his failure to respond to pertinent questions put to him on cross examination.

Viewing the record in its total perspective, it is my opinion that there was testimony from which the jury could have found that appellant had been drinking all afternoon immediately preceding the accident; that he was drunk at the time of the accident; that he ran into the rear of appellee's car on one of the busiest streets in Little Rock; and that there was a lack of candor in

his testimony in the court room, particularly with reference to the distance from which he could see the car and the tail lights on the car. In my opinion, a drunk in an automobile on either Markham Street or University Avenue in the vicinity of Park Plaza shopping center on a Saturday afternoon at or near 5 o'clock is as hazardous as would be a lunatic firing a gun. When his drunken condition is considered along with his lack of candor in testifying, in my opinion the jury was certainly justified in awarding a verdict of $5,000 for punitive damages.

For these reasons I would affirm the judgment.

GEORGE ROSE SMITH and FOGLEMAN, JJ., join in this dissent.