Cite as 2014 Ark. App. 699

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CV-14-450

| | |
|---|---|
| BAPTIST MEMORIAL HOSPITAL-MISSISSIPPI COUNTY, INC. D/B/A BAPTIST MEMORIAL HOSPITAL-BLYTHEVILLE AND D/B/A BAPTIST MEMORIAL HOSPITAL-OSCEOLA      APPELLANTS | **Opinion Delivered** December 10, 2014

APPEAL FROM THE MISSISSIPPI COUNTY CIRCUIT COURT, CHICKASAWBA DISTRICT [NO. CV-2003-380] |
| V. | HONORABLE RANDY F. PHILHOURS, JUDGE |
| MADHU KALYAN, M.D.                    APPELLEE | REVERSED AND REMANDED |

**RITA W. GRUBER, Judge**

This is a breach-of-contract case. The sole issue on appeal is whether substantial evidence supports the jury's award of damages. We hold that substantial evidence does not support the jury's award, and, accordingly, we reverse the trial court's denial of appellant's motion for judgment notwithstanding the verdict (JNOV) and remand with instructions to the trial court to enter judgment consistent with this opinion.

Appellant, Baptist Memorial Hospital-Mississippi County, Inc., d/b/a Baptist Memorial Hospital-Blytheville, and d/b/a Baptist Memorial Hospital-Osceola (BMH), recruited Dr. Madhu Kalyan, M.D., appellee, in the spring of 2002 to come to Mississippi County, Arkansas, to practice medicine. In connection with this, the parties entered into several agreements in May 2002, including a Physician Agreement, Promissory Note and Security Agreement, Lease Agreement for Medical Office Building, and Lease Agreement

SLIP OPINION

for Use of Shared Physician Office Space. Pursuant to these agreements, BMH guaranteed Dr. Kalyan monthly draws for income assistance and practice expenses in exchange for Dr. Kalyan's agreement to practice medicine full-time in Mississippi County. The draws were guaranteed for two years, at which point Dr. Kalyan would be obligated to repay the total amount advanced to him. If Dr. Kalyan continued practicing medicine in Mississippi County longer than two years, the debt would be forgiven at a rate of twenty-five percent per year. In July 2002, Dr. Kalyan moved with his family from the Chicago area to Mississippi County and began practicing medicine.

On May 16, 2003, Dr. Kalyan's attorney wrote a letter to BMH terminating the Physician Agreement. Thereafter, Dr. Kalyan left Mississippi County and began practicing in Fayetteville, Arkansas. BMH filed a complaint against Dr. Kalyan, alleging breach of contract and seeking damages. Dr. Kalyan filed an amended answer and counterclaim. He admitted in his answer that he had agreed in the Physician Agreement to repay the amount of all advances, loans, and draws but denied that he was obligated to repay the amounts to BMH, pleading set-off as an affirmative defense. His amended answer included the additional affirmative defense of estoppel, pursuant to which he contended that he relied to his detriment on BMH's representations that there was a need for his services as a pulmonologist when BMH knew or should have known that there was not adequate demand for his specialty. He alleged two counts in his counterclaim: (1) BMH negligently recruited him, and (2) BMH misrepresented material facts while recruiting him.

The case was tried before a jury on October 24–26, 2011. The parties agreed to a

SLIP OPINION

stipulation of facts, which the judge read to the jury before trial began, stating that the jury should consider these facts to be admitted. Included in the stipulation was Dr. Kalyan's acknowledgment that he had received the sum of $228,350.74 from BMH under the Physician Agreement and Promissory Note and that he had not repaid any of this amount. The parties also stipulated to certain exhibits, including all four agreements between the parties and a statement reflecting all amounts advanced by BMH to Dr. Kalyan, the amounts repaid by Dr. Kalyan, and the monthly rent due, which totaled $228,350.74.

BMH presented the testimony of four witnesses, three of whom were involved in recruiting Dr. Kalyan, who testified that, while Dr. Kalyan was recruited to practice as a pulmonologist, they all knew that there was not sufficient need at the time for a full-time pulmonologist in Mississippi County and, thus, they all told Dr. Kalyan that he would need to supplement his practice with general internal medicine. The fourth witness, Debbie Lassiter, worked for BMH as manager of planning and research. She testified that she prepared the community-needs assessment for the area for pulmonology. The results of her analysis indicated the need at .86 (1.0 means the need is for one full-time doctor). She testified that the need for internal medicine in the area at the time of the assessment was 3.68.

Dr. Kalyan presented the testimony of Dr. Joe Jones, who had lived and practiced internal medicine in Mississippi County since his graduation from medical school in 1979. He testified that he gave his opinion to BMH that specialists needed to be affiliated with a group and begin in the area by working part-time, such as a day a week, and build up a practice slowly. He testified that there was not enough business in the area for a pulmonary

specialist to make a living without spending years developing a practice. He said that he got the impression from talking with Dr. Kalyan that Dr. Kalyan thought that he needed to practice internal medicine in addition to pulmonology to stay busy. Dr. Jones said that he told Dr. Kalyan this could be a mistake because few internal-medicine physicians would refer to him for pulmonary issues if they were concerned he might keep their patient referrals for their internal-medicine needs, too.

Phillip Koonce, a Blytheville accountant, testified that he had been Dr. Kalyan's accountant while he lived in Mississippi County. The essence of his testimony was that, in his opinion, Dr. Kalyan was having financial problems.

Finally, Dr. Kalyan testified that he was board certified in internal medicine, pulmonary medicine, critical-care medicine, and sleep medicine. He said that BMH recruited him for a full-time pulmonary position. He testified that he was never told that he would be required to practice internal medicine. He said that the demand was not sufficient in his area of expertise and that he began having financial difficulties because of the insufficient number of patients. He testified that he had other opportunities when he accepted the BMH position that would not have required him to incur debt. He testified that he had not paid back any of the money advanced under the Physician Agreement. He admitted that his wife, also a doctor, wanted to move to a place where she could practice and that he began looking elsewhere because he was not seeing the volume of patients that he needed to be successful. Both Dr. Kalyan and his wife found jobs in Fayetteville. He signed a contract with his new Fayetteville employer on March 26, 2003. He testified that he understood the forgiveness

provisions of the Physician Agreement but did not think that he had to repay the money

BMH had advanced to him through draws because "there was not enough pulmonary

medicine for me to practice even if I stayed for six years."

The case was submitted to the jury with the following three interrogatories (followed

by the jury's responses): 1) Do you find from a preponderance of the evidence that Dr.

Kalyan breached the contract with Baptist Memorial Hospital? Yes; 2) Do you find from a

preponderance of the evidence that Baptist Memorial Hospital should be estopped from

enforcing the contract against Dr. Kalyan? No; and 3) How much are the damages Baptist

Memorial Hospital is entitled to recover from Dr. Kalyan? $46,478.38. The trial court's

instructions to the jury included the following statement with regard to damages:

> If any interrogatory requires you to assess the damages of [BMH] you must then fix
> the amount of money that [BMH] proved will reasonably and fairly compensate it for
> the element of damage resulting from the breach of contract. The element of damage
> that [BMH] claims is the amount of money that [BMH] loaned to Dr. Madhu Kalyan.

After the trial, but before judgment was entered, BMH filed a motion for judgment

notwithstanding the verdict, contending that there was not substantial evidence to support

the jury's award for damages in any amount other than $228,350.74. BMH argued that it

offered the amount of $228,350.74 in damages—the amount the parties had stipulated that

BMH had advanced to Dr. Kalyan under the agreements and that he admitted he had not

repaid. BMH argued that Dr. Kalyan had offered no evidence regarding damages. The court

denied BMH's motion, and BMH appealed.

This court dismissed BMH's appeal without prejudice on September 11, 2013, for

lack of jurisdiction because the trial court had not disposed of Dr. Kalyan's counterclaim in

SLIP OPINION

a written order. *Baptist Mem'l Hosp.–Miss. Cnty., Inc. v. Kalyan*, 2013 Ark. App. 481. The trial court entered an order dismissing Dr. Kalyan's counterclaim with prejudice on February 24, 2014. This court now has jurisdiction to decide BMH's second appeal challenging the trial court's denial of its motion for JNOV.

Our standard of review of the denial of a motion for directed verdict is whether the jury's verdict is supported by substantial evidence. *Stewart Title Guar. Co. v. Am. Abstract & Title Co.*, 363 Ark. 530, 539, 215 S.W.3d 596, 601 (2005). Similarly, in reviewing the denial of a motion for JNOV, we will reverse only if there is no substantial evidence to support the jury's verdict and the moving party is entitled to judgment as a matter of law. *Id.* Substantial evidence is that which goes beyond suspicion or conjecture and is sufficient to compel a conclusion one way or the other. *Cont'l Carbonic Prods., Inc. v. Cohen* 96 Ark. App. 305, 310, 241 S.W.3d 296, 301 (2006).

The jury determined that Dr. Kalyan breached the contract with BMH and that BMH was not estopped from enforcing the contract. The only question is whether substantial evidence supports the jury's award of damages in this case in the amount of $46,478.38. BMH argues that it was the only party that presented evidence of damages, an amount that Dr. Kalyan stipulated he had taken in draws and failed to repay. BMH contends that Dr. Kalyan presented no evidence regarding damages and thus that there is no substantial evidence to support the jury's award of $46,478.38.

The only dollar amounts entered into evidence were the amounts that Dr. Kalyan received from BMH in draws under the Physician Agreement, the monthly rent charged, and

SLIP OPINION

the moving expenses paid on Dr. Kalyan's behalf. All of these amounts were set forth in a statement, an exhibit to which the parties stipulated, which totaled $228,350.74. Although Dr. Kalyan pleaded set-off as an affirmative defense in his answer, he presented no evidence at trial regarding amounts that should be set-off. Indeed, in his response to BMH's motion for entry of an order dismissing his counterclaim, he specifically stated that he "did not present any proof relating to damages for negligent recruitment or material misrepresentation . . . and no instructions were given relating to damages or set-off as a result of any damages which might have been awarded."

The jury found that Dr. Kalyan breached the agreements with BMH. The breach alleged, and the only breach ever argued by the parties, was that Dr. Kalyan accepted the position to work full-time in Mississippi County; that BMH paid and Dr. Kalyan received guaranteed draws for income assistance and practice expenses under the Physician Agreement; that the Physician Agreement required Dr. Kalyan to repay amounts advanced unless he practiced long enough to receive debt forgiveness; that the amount Dr. Kalyan received under the agreements was $228,350.74; that Dr. Kalyan left Mississippi County after ten months of practice; and that Dr. Kalyan had not repaid any of the amount he had received from BMH. Although Dr. Kalyan presented evidence at trial that BMH should be estopped from enforcing the contract against him, the jury found that BMH was not estopped. Finally, he presented no evidence at trial regarding amounts that should be set off.

The evidence is uncontradicted that Dr. Kalyan received $228,350.74 in draws pursuant to the Physician Agreement. Dr. Kalyan's only argument that he was not required

7

to repay that amount was that BMH was estopped to enforce the contract. Although he alleged set-off in his answer, he failed to present evidence of set-off. And his counterclaim alleging negligent-recruitment and misrepresentation was dismissed. We hold that substantial evidence does not support the jury's verdict. *See, e.g., Coleman v. Utley*, 153 Ark. 233, 240 S.W. 10 (1922).

Dr. Kalyan argues that BMH has waived the right to object to the jury's damages award because it failed to object to the interrogatory allowing the jury to set the amount of damages. He cites *Willis v. Elledge*, 242 Ark. 305, 413 S.W.2d 636 (1967), in which the court held that it could not consider appellant's argument that the evidence was insufficient to submit the issue of punitive damages to the jury where appellant failed to object to the punitive-damage instruction. *Willis* is not persuasive in this case. BMH is not objecting to the giving or failure to give an instruction on damages. It contends that substantial evidence does not support the jury's award. BMH argues that it requested the jury to award $228,350.74. Whether substantial evidence would have supported some other award, more or less than $228,350.74, is not before us. BMH argues, and we agree, that substantial evidence does not support the jury's award here.

Finally, Dr. Kalyan contends that BMH failed to move for a directed verdict at the conclusion of his case on the issue of estoppel and thus has waived the right to request a motion for JNOV. The jury determined the issue of estoppel in BMH's favor. BMH is not challenging the jury's determination on that issue. BMH's challenge is to the jury's award of damages.

Reversed and remanded.

WYNNE and BROWN, JJ., agree.

*Philip Hicky, II, Ltd.*, by: *Philip Hicky II* and *Jessica J. Trail*, for appellant.

*Bearden Law Firm*, by: *Mike Bearden*, for appellee.